**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMERICA FIRST LEGAL FOUNDATION,

        *Plaintiff*,

   v.

U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

        *Defendants*.

Case No. 21-cv-2168-RDM

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

   I.    STANDARDS OF REVIEW .......................................................................... 4

   II.   DEFENDANTS PROPERLY WITHHELD VISA APPROVAL OR DENIAL
        INFORMATION UNDER EXEMPTION 3 ................................................... 6

   III.  DEFENDANTS PROPERLY APPLIED EXEMPTIONS 6 AND 7(C) TO PROTECT
        PERSONAL IDENTIFYING INFORMATION ........................................... 7

        A.   THE SPREADSHEET INFORMATION WAS COMPILED FOR LAW
             ENFORCEMENT PURPOSES ......................................................... 7

        B.   THE RECORDS ARE APPROPRIATELY WITHHELD UNDER
             EXEMPTION 7(C) ............................................................................ 9

        1.   NAMES ...................................................................................... 12

        2.   COURT CASE NUMBERS ......................................................... 17

        3.   A-NUMBERS AND OTHER IDENTIFYING NUMBERS ............. 19

        4.   DATES OF BIRTH ..................................................................... 21

        5.   RESIDENTIAL ADDRESSES ..................................................... 22

        6.   GANG, CARTEL, AND TERRORIST GROUP AFFILIATION ...... 23

        7.   MONIKERS ............................................................................... 24

        C.   EXEMPTION 6 ................................................................................. 25

   IV.  DEFENDANTS PROPERLY APPLIED EXEMPTION B(7)(E) ................................ 27

        A.   SPECIFIC APPREHENSION LOCATIONS ..................................... 28

        B.   ADDRESSES AND ATTEMPTS TO LOCATE NONCITIZENS ..................... 29

        C.   HONORING OF ICE DETAINERS AND REQUESTS AND
             COOPERATION WITH STATE AND LOCAL LAW ENFORCEMENT ........ 30

i

       D.    GANG, CARTEL, TERRORIST GROUP AFFILIATION,
            AND MONIKERS ............................................................................................. 30

   V.   ICE PROPERLY RELEASED ALL REASONABLY SEGREGABLE
       INFORMATION ................................................................................................... 31

  VI.   FORESEEABLE HARM WOULD RESULT FROM THE RELEASE OF THE
       EXEMPT INFORMATION .................................................................................... 32

CONCLUSION ...................................................................................................... 33

# TABLE OF AUTHORITIES

### CASES

*ACLU v. U.S. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) ............................................................... 13, 14, 15, 17

*ACLU v. U.S. Dep't of Just.*,
   750 F.3d 927 (D.C. Cir. 2014) ............................................................................ 15

*Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*,
   464 F. Supp. 3d 228 (D.D.C. 2020) .................................................................... 28

*Am. Jewish Congress v. Kreps*,
   574 F.2d 624 (D.C. Cir. 1978) .............................................................................. 6

*Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*,
   830 F.2d 331 (D.C. Cir. 1987) .............................................................................. 6

*August v. FBI*,
   328 F.3d 697 (D.C. Cir. 2003) .............................................................................. 4

*Bast v. U.S. Dep't of Just.*,
   665 F.2d 1251 (D.C. Cir. 1981) .......................................................................... 11

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ................................................................... 8, 20, 27

*Blanton v. U.S. Dep't of Just.*,
   63 F. Supp. 2d 35 (D.D.C. 1999) ........................................................................ 11

*Brayton v. Off. of U.S. Trade Rep.*,
   641 F.3d 521 (D.C. Cir. 2011) .............................................................................. 5

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of Just.*,
   No. CV 18-1860 (RDM), 2021 WL 2711765 (D.D.C. July 1, 2021) .............................. *passim*

*Burton v. Wolf*,
   803 F. App'x 120 (9th Cir. 2020) ................................................................. 13, 25

*Cerveny v. CIA*,
   445 F. Supp. 772 (D. Colo. 1978) ...................................................................... 26

*CIA v. Sims*,
   471 U.S. 159 (1985) ............................................................................................. 4

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) .......................................................................... 10

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
  854 F.3d 675 (D.C. Cir. 2017) ................................................................... 17

*Clemente v. FBI,*
  867 F.3d 111 (D.C. Cir. 2017) ............................................................... 7, 23

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. HHS*,
  554 F.3d 1046 (D.C. Cir. 2009) ............................................................ 16, 26

*Cooper v. U.S. Dep't of Just.*,
  No. 99-2513, 2022 WL 602532 (D.D.C. Mar. 1, 2022) ............................... 7

*Council v. U.S. Immigr. & Custom,*
  *Enf't*, 464 F. Supp. 3d 228 (D.D.C. 2020) ............................................... 28

*Ctr. for Investigative Reporting v. U.S. Immigr. & Customs Enf't*,
  No. 1:18-CV-01964 (CJN), 2019 WL 6498817 (D.D.C. Dec. 3, 2019) ............ 14, 15

*Davis v. U.S. Dep't of Just.*,
  968 F.2d 1276 (D.C. Cir. 1992) ...................................................... 10, 16, 18

*Def. of Animals v. NIH*,
  543 F. Supp. 2d 70 (D.D.C. 2008) .......................................................... 26

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) .......................................................................... 26

*Dep't of State v. Wash. Post Co.,*
  456 U.S. 595 (1982) .................................................................. 21, 25, 26

*Dunkelberger v. Dep't of Just.,*
  906 F.2d 779 (D.C. Cir. 1990) .............................................................. 11

*Electronic Privacy Information Center v. United States Department of Homeland Security*,
  777 F.3d 518 (D.C. Cir. 2015) ................................................................ 8

*Farahi v. FBI,*
  --- F. Supp. 3d ----, 2022 WL 17338008 (D.D.C. Nov. 30, 2022) ..................... 8

*Gilliam v. U.S. DOJ,*
  128 F. Supp. 3d 134 (D.D.C. 2015) .......................................................... 5

*In Def. of Animals v. NIH,*
  543 F. Supp. 2d 70 (D.D.C. 2008) .......................................................... 26

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ...................................................................... 4, 5, 8

*Johnson v. Exec. Off. for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ................................................................ 31

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ................................................................ 5

*Lewis v. IRS*,
    823 F.2d 375 (9th Cir. 1987) ................................................................. 5

*Lewis v. U.S. Dep't of Just.*,
    867 F. Supp. 2d 1 (D.D.C. 2011) ........................................................... 12

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) .............................................................. 27

*McGehee v. U.S. Dep't of Just.*,
    800 F. Supp. 2d 220 (D.D.C. 2011) .................................................... 12, 22

*Medina-Hincapie v. Dep't of State*,
    700 F.2d 737 (D.C. Cir. 1983) ............................................................ 6, 7

*Nation Mag., Wash. Bureau v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ................................................................ 11

*Nat'l Archives & Records Admin. v. Favish ("NARA")*,
    541 U.S. 157 (2004) ...................................................................... 5, 10, 12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ........................................................... 21, 26

*Nova Oculus Partners, LLC v. U.S. SEC*,
    486 F. Supp. 3d 280 (D.D.C. 2020) ....................................................... 10

*Painting & Drywall Work Pres. Fund, Inc. v. HUD*,
    936 F.2d 1300 (D.C. Cir. 1991) ............................................................. 11

*Parker v. U.S. Immigr. & Customs Enf't*,
    238 F. Supp. 3d 89 (D.D.C. 2017) ........................................................ 9, 23

*People for the Ethical Treatment of Animals v. NIH*,
    745 F.3d 535 (D.C. Cir. 2014) ............................................................... 13

*Prison Legal News v. Lappin*,
    780 F. Supp. 2d 29 (D.D.C. 2011) ......................................................... 20

*Pub. Emps. for Env't Resp. v. U.S. Dep't of the Interior*,
    No. 06-0182, 2006 WL 3422484 (D.D.C. Nov. 28, 2006) ......................... 13

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,*
  740 F.3d 195 (D.C. Cir. 2014) ................................................................................ 7

*Reed v. NLRB,*
  927 F.2d 1249 (D.C. Cir. 1991) ............................................................................ 26

*Reps. Comm. for Freedom of the Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021) ................................................................................. 32

*Rojas-Vega v. U.S. Immigr. & Customs Enf't,*
  302 F. Supp. 3d 300 (D.D.C. 2018) ......................................................................... 9

*Roseberry-Andrews v. Dep't of Homeland Sec.,*
  299 F. Supp. 3d 9 (D.D.C. 2018) ............................................................................. 9

*Roth v. U.S. Dep't of Just.,*
  642 F.3d 1161 (D.C. Cir. 2011) ............................................................................ 11

*Sack v. United States Department of Defense,*
  823 F.3d 687 (D.C. Cir. 2016) ................................................................................ 8

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ....................................................................... 5, 11

*Soghoian v. U.S. Dep't of Justice,*
  885 F. Supp. 2d 62 (D.D.C. 2012) ........................................................................ 31

*Southam News v. U.S. INS,*
  674 F. Supp. 881 (D.D.C. 1987) ........................................................................... 14

*Stern v. FBI,*
  737 F.2d 84 (D.C .Cir. 1984) ......................................................................... 11, 22

*Sussman v. U.S. Marshals Serv.,*
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................................ 31

*Tax Analysts v. IRS,*
  294 F.3d 71 (D.C. Cir. 2002) ................................................................................ 28

*Telematch, Inc. v. U.S. Dep't of Agric.,*
  45 F.4th 343 (D.C. Cir. 2022) ............................................................................... 26

*Tuffly v. U.S. Dep't of Homeland Sec.,*
  870 F.3d 1086 (9th Cir. 2017) ................................................................... 14, 15, 16

*U.S. Dep't of Air Force v. Rose,*
  425 U.S. 352 (1976) ............................................................................................. 26

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*,
  489 U.S. 749 (1989) ................................................................................. *passim*

*Vazquez v. U.S. Dep't of Justice*,
  887 F. Supp. 2d 114 (D.D.C. 2012),
  *aff'd*, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013) .............................................. 27

*Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*,
  No. CV 18-2622 (ABJ), 2021 WL 4502106 (D.D.C. Sept. 30, 2021) ..................... 32

### STATUTES

5 U.S.C. § 552(a)(4)(B) .............................................................................. 5

5 U.S.C. § 552(a)(8)(A)(i) ...................................................................... 32, 33

5 U.S.C. § 552(b) ...................................................................................... 31

5 U.S.C. § 552(b)(3)(A) ............................................................................. 6

5 U.S.C. § 552(b)(6) ................................................................................ 25

5 U.S.C. § 552(b)(7)(A) ............................................................................. 7

5 U.S.C. § 552(b)(7)(C) ......................................................................... 9, 33

5 U.S.C. § 552(b)(7)(E) ............................................................................ 27

8 U.S.C. § 1202(f) ..................................................................................... 6

### RULES

Fed. R. Civ. P. 56(a) .................................................................................. 5

### REGULATIONS

6 C.F.R. § 5.3(a) ...................................................................................... 13

6 C.F.R. § 5.21(d) .................................................................................... 13

### OTHER AUTHORITIES

U.S. Immigration and Customs Enforcement, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Feb. 18, 2021), https://www.ice.gov/doclib/news/releases/
2021/021821_civil-immigration-enforcement_interim-guidance.pdf ......................... 2

## INTRODUCTION

This action arises from a Freedom of Information Act (FOIA) request submitted by Plaintiff, America First Legal Foundation, to Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS).  In its three-part request, Plaintiff sought various records relating to a memorandum issued on February 18, 2021, by Acting Director of ICE Tae Johnson titled "Interim Guidance: Civil Immigration Enforcement and Removal Priorities."  The parties agreed that Defendants would prioritize processing an Excel spreadsheet (Spreadsheet Report) containing reports from ICE officers about enforcement actions.  Entries in the Spreadsheet Report contain significant personal information about noncitizens, including their names, dates of birth, residential addresses, family information, charged and uncharged criminal activity, visa information, and health information.  At Plaintiff's suggestion, the Court permitted early summary judgment briefing on Defendants' withholdings in the Spreadsheet Report, based on a sample, in order to streamline future production of the record.

Defendants properly withheld personal identifying information of third parties named in the Spreadsheet Report under FOIA Exemptions 6 and 7(C).  ICE compiled the Spreadsheet Report for law enforcement purposes, and disclosure of noncitizens' names, court case numbers, A-numbers and other identifying numbers, dates of birth, residential addresses, gang, cartel, and terrorist group affiliations, and monikers would seriously invade personal privacy without serving the public interest in understanding ICE's operations. Under Exemption 7(E), ICE properly withheld addresses and attempts to locate at-large noncitizens, specific apprehension locations, information pertaining to ICE detainers and requests, as well as cooperation with state and local law enforcement, and information pertaining to the names of specific gang, cartel and terrorism groups, of which the noncitizens are alleged to be affiliated with, as well as monikers that the

1

noncitizens utilize in connection with that affiliation.  Disclosure of this information would disclose techniques and procedures for law enforcement investigations and would disclose guidelines for law enforcement investigations that could reasonably be expected to risk circumvention of the law.  Because the withheld information is exempt from FOIA's disclosure requirements, the Court should enter partial summary judgment for Defendants with respect to the Spreadsheet Report.

## BACKGROUND

On February 18, 2021, ICE issued "Interim Guidance: Civil Immigration Enforcement and Removal Priorities," which explained that "ICE operates in an environment of limited resources," and "necessarily must prioritize" certain "enforcement and removal actions over others" in order to "most effectively achieve [its] mission" of "national security, border security, and public safety."  U.S. Immigration and Customs Enforcement, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities*, 2-3 (Feb. 18, 2021), https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf.  The guidance catalogued three priority groups for enforcement: individuals who were threats to national security, border security, and public safety.  The priority framework did not "prohibit the arrest, detention, or removal of any noncitizen." *Id.* at 3.  Enforcement actions against other noncitizens were permissible when justified by "all relevant facts and circumstances," including the nature of any prior criminal convictions and the agency's limited resources.  *Id*.  The guidance required that ICE officials secure "preapproval" of "enforcement or removal actions" against other persons to ensure that resources are spent pursuing priority cases.  *Id.* at 6.[1]

---

[1] The guidance acknowledged that, "[i]n some cases, exigent circumstances and the demands of public safety will make it impracticable to obtain preapproval."  *Id.*  Thus, in these

Plaintiff submitted a FOIA request dated May 18, 2021, to ICE.  The request sought three categories of documents, of which one is relevant to this partial motion for summary judgment: "All 'written reports' referred to in the subsection titled 'Weekly Reporting of All Enforcement And Removal Actions' on page 7 of a memorandum from Tae D. Johnson to 'All ICE Employees' with a subject line of 'Interim Guidance: Civil Immigration Enforcement and Removal Priorities' (Feb. 18, 2021) (the "Interim Guidance"), whether the reports be termed 'Reports,' 'Summaries,' 'Rollups,' or otherwise."[2]  Decl. of Fernando Pineiro ¶ 8 ("Pineiro Decl.").  Before Defendants provided a final response, Plaintiff initiated this action on August 13, 2021.

After Defendants filed an Answer, the parties conferred about processing records.  Plaintiff identified the first category of documents as a priority for processing.  Defendants identified the Spreadsheet Report, which is a cumulative report that encompassed all of the entries for noncitizens listed in the various written reports and began processing that report.  The Spreadsheet Report contains two tabs that are at issue. The first tab (All Priorities) contains approximately 57,000 rows and forty-eight columns of information. ICE has been processing approximately 2,000 rows per month from this tab. The second tab (Denials), contains approximately 1,400 rows and fifty-two columns of information. Plaintiff expressed concerns with certain withholdings being

---

circumstances, the guidance allowed agents to "conduct the enforcement action and then request approval . . . within 24 hours." *Id.*  The guidance also includes a general catch-all provision allowing agents to submit "requests to exercise . . . individualized discretion" in certain cases, if it is "in the interest[] of law and justice." *Id.*

[2] The other two categories of documents are "All records, including, but not limited to, electronic mail, texts, memoranda, and handwritten notes, of, regarding, referring, or relating to the Interim Guidance from, to, or in the possession of each of [seven ICE] components," and "All records, including, but not limited to electronic mail, texts, memoranda, and handwritten notes, of, regarding, referring, or relating to the interim civil immigration enforcement and removal priorities described in a memorandum issued by Acting Secretary Pekoske and titled 'Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities' (Jan. 20, 2021) (the "Priorities Memo") within the possession of ICE." Pineiro Decl. ¶ 8.

applied to the Spreadsheet Report.  To facilitate discussions with Plaintiff, ICE provided general categories of withholdings that ICE had applied to the spreadsheet entries.  The parties reached agreement on certain withholdings, with ICE making a discretionary release of some information and Plaintiff foregoing a challenge to other information, but some disputes remain.

After the parties conferred and the Court held status conferences to discuss the dispute, the Court permitted early summary judgment briefing with respect to the Spreadsheet Report.  "[E]arly summary judgment briefing is contingent on Plaintiff's agreement not to raise any additional ground for relief later in the case, except to the extent Defendants change or adopt new parameters for withholding responsive material" in the Spreadsheet Report.  Minute Order (April 30, 2023).[3]

## ARGUMENT

### I.    STANDARDS OF REVIEW

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).  "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985).  Accordingly, although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency*, 493 U.S. at 152).  FOIA's "nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of

---

[3] Early summary judgment briefing is only with respect to the withholdings identified by Plaintiff that remain in dispute pertaining to the Spreadsheet Report. ICE has identified approximately 20,289 pages and 25 excel files of other potentially responsive records that are not being litigated in the early summary judgment briefing. *See* Joint Status Report, ECF No. 12 (Mar. 18, 2022).

information." *Id.* (citation omitted). Thus, the exemptions must be given "meaningful reach and application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted). The agency bears the burden of justifying the withholding of material responsive to a FOIA request, and a court reviews the agency's response to the request *de novo*. 5 U.S.C. § 552(a)(4)(B). But once the government identifies a greater than de minimis privacy interest, Plaintiff bears the burden of establishing a cognizable public interest in information withheld under Exemptions 6 and 7(C). *See Nat'l Archives & Records Admin. v. Favish ("NARA")*, 541 U.S. 157, 172 (2004).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). This is not a high bar: "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* The Government's FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation omitted); *see also Lewis v. IRS*, 823 F.2d 375, 378-79 (9th Cir. 1987) (where

affidavit contains reasonably detailed description of the document and alleges facts sufficient to establish an exemption, the court may rely on the affidavit and award the agency summary judgement).

## II.    DEFENDANTS PROPERLY WITHHELD VISA APPROVAL OR DENIAL INFORMATION UNDER EXEMPTION 3.

Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," if that statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]"  5 U.S.C. § 552(b)(3)(A). Those "two subsections are separate and distinct," and a statute need only satisfy one to authorize withholding under Exemption 3.  *Am. Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C. Cir. 1978).  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

Section 222(f) of the Immigration and Nationality Act provides that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential." 8 U.S.C. § 1202(f).  This confidentiality provision "qualifies under both" subsections of Exemption 3.  *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983).

ICE has released information about the type of visas noncitizens have, *e.g.*, Vaughn Index at 2, but, in one instance, withheld the information pertaining to the Department of State's determination whether or not to grant or deny a visa request and the rationale behind that decision. Pineiro Decl. ¶ 54.  As that information is confidential under § 222(f), ICE properly applied

6

Exemption 3.  *See Cooper v. U.S. Dep't of Just.*, No. 99-2513, 2022 WL 602532, at *27 (D.D.C.

Mar. 1, 2022) (relying on *Medina-Hincapie*, 700 F.2d at 744, to uphold agency's withholding of

"information related to the issuance or refusal of a visa or permit to enter the United States")

(quotation marks omitted).

### III.    DEFENDANTS PROPERLY APPLIED EXEMPTIONS 6 AND 7(C) TO PROTECT PERSONAL IDENTIFYING INFORMATION

ICE properly withheld noncitizens' personal identifying information under both

Exemptions 6 and 7(C).  Defendants will first apply the test for Exemption 7(C) to each category

of withholdings, before turning to Exemption 6.  If the Court agrees that the Spreadsheet Report

was compiled for law enforcement purposes, it need only address the more-protective test under

Exemption 7(C).

### A.  THE SPREADSHEET INFORMATION WAS COMPILED FOR LAW ENFORCEMENT PURPOSES

A threshold for Exemption 7 withholdings is that the information was "compiled for law

enforcement purposes[.]" *See* 5 U.S.C. § 552(b)(7)(A)-(F).  The records Plaintiff requested meet

this threshold because they reflect core law enforcement functions of ICE—the administration and

enforcement of U.S. immigration law and the safeguarding of U.S. national security through its

immigration system.  *See* Pineiro Decl. ¶¶ 57–59. Exemptions 7(C) and 7(E), therefore, apply.

"To determine whether records are compiled for law enforcement purposes, [the D.C.

Circuit] has long emphasized that the focus is on how and under what circumstances the requested

files were compiled and whether the files sought relate to anything that can fairly be characterized

as an enforcement proceeding." *Clemente v. FBI,* 867 F.3d 111, 119 (D.C. Cir. 2017) (citation

omitted); *see Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-*

*Mexico,* 740 F.3d 195, 203 (D.C. Cir. 2014) ("[T]he term 'compiled' in Exemption 7 requires that

7

a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption.") (citing *John Doe Agency*, 493 U.S. at 155). This is not an onerous task. Documents are "compiled for law enforcement purposes" if they were, for example, "created to prevent crime and keep people safe," *Electronic Privacy Information Center v. United States Department of Homeland Security*, 777 F.3d 518, 522-23 (D.C. Cir. 2015), "deter illegal activity and ensure national security," *Sack v. United States Department of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016), or otherwise show a "rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law," *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks omitted)).

The ICE records at issue here were created for law enforcement purposes because they reflect how ICE Enforcement and Removal Operations (ERO) officers decided to take enforcement actions against noncitizens based on priorities pertaining to the safety and protection of the public and national security. *See* Pineiro Decl. ¶¶ 14-16, 57-59. The records at issue directly relate to ICE's statutory responsibilities and authority pertaining to the enforcement of laws relating to the immigration and naturalization of noncitizens. *Id.* ¶ 58. ICE is the "largest investigative arm of DHS" and is charged with thwarting vulnerabilities within the border and countering national security threats through the investigation of "people, money, and materials that support illegal enterprises." *Id.* ¶ 57; *see Farahi v. FBI*, --- F.Supp.3d ----, 2022 WL 17338008, at *4 (D.D.C. Nov. 30, 2022) ("[C]ourts are more deferential to the agency's claimed purpose for the particular records when the agency's principal function is law enforcement") (citation omitted). Within this mission, ERO operations focus on handling public safety threats like "convicted criminal noncitizens and gang members" who have violated federal immigration laws and assist

with the apprehension of foreign fugitives who are in the U.S. and wanted for crimes abroad. Pineiro Decl. ¶ 60. The Spreadsheet Report is part of the "reporting requirements on all enforcement and removal actions" called for in the prioritization memorandum. *Id.* ¶ 14. The Spreadsheet Report contains information about noncitizens subject to enforcement and removal pursuant to ICE's statutory law enforcement responsibilities.  Courts regularly conclude that ICE records were compiled for "law enforcement purposes." *See, e.g.*, *Rojas-Vega v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 309 (D.D.C. 2018) ("ICE meets its threshold requirement by demonstrating that the responsive records were compiled for law enforcement purposes"); *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 33 (D.D.C. 2018) (similar); *Parker v. U.S. Immigr. & Customs Enf't*, 238 F. Supp. 3d 89, 99 (D.D.C. 2017) (similar). Thus, all records created in furthering ICE ERO's operations, including the Spreadsheet Report, easily pass the "law enforcement purposes" threshold.

## B.  THE RECORDS ARE APPROPRIATELY WITHHELD UNDER EXEMPTION 7(C)

As ICE compiled the Spreadsheet Report for law enforcement purposes, Exemption 7(C) applies to the withholdings that protect personal privacy. 5 U.S.C. § 552(b)(7)(c).  The concept of privacy encompasses both that which is inherently private and an "individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989).

While both Exemptions 6 and 7(C) implicate privacy interest, the "standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files." *Id.* at 756. Thus, when comparing the two exemptions, courts routinely note that Exemption 7(C) "cover[s] a broader range of privacy interests." *Brennan Ctr. for Just. at New*

*York Univ. Sch. of L. v. United States Dep't of Just.*, No. CV 18-1860 (RDM), 2021 WL 2711765, at *3 (D.D.C. July 1, 2021) (citing *NARA*, 541 U.S. at 165–66).  The Supreme Court has noted that the language of Exemption 7(C) "is in marked contrast to the language in Exemption 6, pertaining to 'personnel and medical files,'" with Exemption 7(C) more broadly protecting personal privacy by omitting the word "clearly" and substituting the "would constitute" standard for "could reasonably be expected to" standard. *NARA*, 541 U.S. at 165-66.

Because both exemptions are implicated here, the Court should apply the stricter 7(C) evaluation of privacy interests. "When an agency invokes both exemptions, courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" *Nova Oculus Partners, LLC v. U.S. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).  To determine if requested records meet the Exemption 7(C) standard, a court must weigh an individual's privacy interest against the public's singular interest "to be informed about what their government is up to." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm.*, 489 U.S. at 773). Exemption 7(C) has a stricter standard because "[l]aw enforcement documents . . . often contain information about persons . . . whose link to the official inquiry may be the result of mere happenstance," "[t]here is special reason . . . to give protection to . . . intimate personal data, to which the public does not have a general right of access in the ordinary course." *NARA*, 541 U.S. at 166 (citing *Reps. Comm.,* 489 U.S. at 773).

The Supreme Court has adopted a broad construction of the privacy interests protected, rejecting a "cramped notion of personal privacy" and emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person." *Reps. Comm.*, 489 U.S. at 763. Privacy is of particular importance in the FOIA context because a FOIA disclosure is a

disclosure to the public at large. *See Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

Individuals mentioned in law enforcement materials have a presumptive privacy interest in having their names and other personal information withheld from public disclosure. *See, e.g.*, *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995); *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1254-55 (D.C. Cir. 1981). "[A]s a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *Reps. Comm.*, 489 U.S. at 780. On the other hand, the public interest in knowing the names of individuals mentioned in law enforcement records, as a general matter, is nil. *See Blanton v. U.S. Dep't of Just.*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) ("The privacy interests of third parties mentioned in law enforcement files are 'substantial,' while '[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is unsubstantial.'" (quoting *SafeCard*, 926 F.2d at 1205 (alterations in original)).

The categorical withholding of information that identifies third parties in law enforcement records will ordinarily be appropriate under Exemption 7(C), given the traditional recognition of the strong privacy interests inherent in law enforcement records. *See Dunkelberger v. Dep't of Just.,* 906 F.2d 779, 781 (D.C. Cir. 1990)("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'")(quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C .Cir. 1984)).

When a request for records implicates individual privacy interests, the requestor must establish a sufficient public interest in the disclosure. *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161,

1174 (D.C. Cir. 2011). To "give practical meaning to the exemption, the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *NARA*, 541 U.S. at 172. Instead, the Supreme Court held that unless a requester shows "that the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest," an invasion of privacy is necessarily unwarranted in the Exemption 7(C) context. *Id.*; *see also Lewis v. U.S. Dep't of Just.*, 867 F. Supp. 2d 1, 19 (D.D.C. 2011) (holding that "[i]t is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant") (citing *NARA*, 541 U.S. at 172); *McGehee v. U.S. Dep't of Just.*, 800 F. Supp. 2d 220, 234 (D.D.C. 2011) ("Although the Jonestown Massacre may have elicited a great deal of public attention, the relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties.").

The information that ICE withheld under Exemption 7(C) was compiled for law enforcement purposes, as explained above. Additionally, the individuals at issue in the records have a privacy interest in not having their information disclosed. There is no public interest in the personal information that has been withheld, let alone a significant one, nor is the information withheld likely to advance any interest. Lastly, should any public interest exist in the information, disclosure of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy. Thus, ICE has appropriately asserted Exemption 7(C).

### 1.    NAMES

ICE properly withheld the names of noncitizens pursuant to Exemption 7(C) because releasing the names risks significant intrusion on noncitizens' privacy interests, and those of third parties, without furthering the public interest.

Individuals have an undisputable privacy interest in not being publicly associated with both criminal and non-criminal law enforcement efforts, which itself satisfies the first prong of the withholding analysis. *Reps. Comm.*, 489 U.S. at 753, 771 (allowing withholding of FBI "rap sheet" because of individual's "substantial" personal privacy interest, notwithstanding that "much rap-sheet information is a matter of public record"). That privacy interest can "extend even to [information regarding] convictions and public pleas," *see ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 8 (D.C. Cir. 2011), as well as to information about civil investigations, *see People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 541-42 (D.C. Cir. 2014) (strong privacy interest in civil investigation of federal research grant recipients). Noncitizens clearly possess a privacy interest in the names that appear in law enforcement files, which satisfies the Government's burden.[4] *See Brennan Ctr.*, 2021 WL 2711765, at *10-11.

ICE's withholdings serve a particularly important privacy interest here, where ICE has released significant other personal identifying information about noncitizens. The information ICE has released in which individuals have a privacy interest includes, but is not limited to, information on the noncitizens' immigration status, *Burton v. Wolf*, 803 F. App'x 120, 121 (9th Cir. 2020),  immigration histories, visa status, DACA and employment authorization status, citizenship, ethnicity, criminal histories—including pending and uncharged conduct, *Brennan Ctr.*, 2021 WL 2711765, at *10-11, health history, *Pub. Emps. for Env't Resp. v. U.S. Dep't of the Interior*, No. 06-0182, 2006 WL 3422484, at *4 n.4 (D.D.C. Nov. 28, 2006), immigration enforcement activities they were subject to, and family relations and associates. Pineiro Decl. ¶ 101.

---

[4] No third party identified in the records has consented to ICE releasing their information. *See* 6 C.F.R. §§ 5.3(a) & 5.21(d).

In similar circumstances, the Ninth Circuit determined that ICE properly withheld the names of noncitizens who had previously been detained by the Government. *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1091 (9th Cir. 2017). In holding that "disclosing the names" of noncitizens "would give rise to significant privacy concerns," the court emphasized that "much personal and private information" about the noncitizens had been released by ICE. *Id.* at 1094. This Court has relied on *Tuffly* to affirm DHS's withholding of arrest records for noncitizens. *Ctr. for Investigative Reporting v. U.S. Immigr. & Customs Enf't*, No. 1:18-CV-01964 (CJN), 2019 WL 6498817, at *5 (D.D.C. Dec. 3, 2019); *see also Southam News v. U.S. INS*, 674 F. Supp. 881, 887 (D.D.C. 1987) (disclosure of identities of individuals excludable from U.S. "would result in derogatory inferences about" those individuals). It is no answer that some of the identifying information is likely available in the public sphere, because noncitizens still have a privacy interest in preventing further dissemination to the public at large. *ACLU*, 655 F.3d at 4. And where some of the information contained in the Spreadsheet Report is decades old, *e.g.*, Vaughn Index at 77 (reference a conviction from 1997), noncitizens retain a privacy interest in information that was public but has become "practical[ly] obscur[e]." *See Reps. Comm.*, 489 U.S. at 767.

The Spreadsheet Report also implicates the privacy interests of third parties who could be identified through the release of names of noncitizens in the record. For instance, Row 652 in the March 2023 Production identifies that the noncitizen has a U.S. Citizen mother and daughter; Row 1685 in the March 2023 Production identifies that the noncitizen has two minor U.S. Citizen children; Row 174 in the April 2023 Production references the noncitizen's child; and Row 324 in the April Production references the noncitizen's relative. Vaughn Index at 213. These third parties could be identified if their family members were named in the Spreadsheet Report, which could reasonably be expected to constitute an unwarranted invasion of the third party's personal privacy

interests in not being associated with criminal law enforcement activities and ICE's law enforcement activities. *See ACLU v. U.S. Dep't of Just.*, 750 F.3d 927, 936 (D.C. Cir. 2014) (family members have interest in "avoiding the increased scrutiny" from release of deceased loved one's docket information).

The instances where courts have required the disclosure of criminals' names—either directly or through disclosure of public criminal docket numbers—have occurred where the government released very limited amounts of other personal identifying information. In *ACLU*, the D.C. Circuit rejected the agency's decision to withhold criminal case and docket numbers of "individuals who were tracked using mobile location data" that the government obtained without a warrant. 655 F.3d at 4. The court determined that the request would likely only result in a "scattered disclosure" that was "likely to lead to the fact of a single conviction, not a comprehensive scorecard of a person's entire criminal history across multiple jurisdictions." *Id.* at 9-10 (citation omitted). Likewise in *Brennan Center*, this Court permitted the disclosure of public docket numbers for individuals convicted of terrorism-related offenses on the understanding that, like in *ACLU*, the release "would disclose only information that has already been the subject of a public proceeding." *Brennan Ctr.*, 2021 WL 2711765, at *10-11 (quotation marks and citation omitted). The Spreadsheet Report, by contrast, often does contain a "comprehensive scorecard," not only of a noncitizens' "entire criminal history," *see e.g.*, Vaughn Index at 37, but also of their family history and other personal information, *e.g.*, Vaughn Index at 99. ICE appropriately recognized that noncitizens would face a severe invasion of privacy given the totality of the information ICE has disclosed. *See Tuffly*, 870 F.3d at 1091; *Ctr. for Investigative Reporting*, 2019 WL 6498817, at *5.

15

Plaintiff cannot carry its burden on the second prong of the analysis—now that Defendants have established a privacy interest in the names—because releasing the names of noncitizens will not serve the public interest.  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Reps. Comm.*, 489 U.S. at 773). Plaintiff's effort to state a public interest in the identities of noncitizens who committed crimes is not cognizable. Pineiro Decl. ¶ 98; *see Davis*, 968 F.2d at 1282.

ICE has served the public interest by releasing information about how officers justified the enforcement decisions they made under the prioritization scheme, including information about noncitizens' criminal histories.  *See* Pineiro Decl. ¶¶ 99-101; Vaughn Index at 212-13.  This information shows the public what ICE is up to. *See Davis*, 968 F.2d at 1282. As in *Tuffly*, the "release of the names would not itself advance the public interest in understanding the impact of the government's [enforcement] policies."  870 F.3d at 1098; *see also Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. HHS*, 554 F.3d 1046, 1051 (D.C. Cir. 2009) ("'[I]nformation about private citizens . . . that reveals little or nothing about an agency's own conduct' does not serve a relevant public interest under FOIA.") (quoting *Reps. Comm.*, 489 U.S. at 773).  The Court, therefore, should conclude that ICE properly withheld names under Exemption 7(C).

The Court need not reach the final step of the analysis—balancing the privacy interest against the public interest—because Plaintiff cannot identify a cognizable public interest.  But even if it could, noncitizens' privacy interests would outweigh any public interest.  Third parties have privacy interests that in their names in law enforcement files, which is only heightened when the names appear along with significant personal information about the individuals.  Those

revelations about personal information would outweigh any marginal public interest gained from their disclosure.

The Court should conclude that ICE properly withheld names under Exemption 7(C).

### 2. COURT CASE NUMBERS

ICE properly withheld the court case numbers associated with noncitizens' criminal cases under Exemption 7(C).  Some of those cases resulted in convictions, *e.g.*, Vaughn Index at 14, while other cases had not reached a disposition when ICE considered taking an enforcement action against the noncitizen, *e.g.*, Vaughn Index at 3.  *See* Pineiro Decl. ¶ 79.  The derivative use of court case numbers, of course, is to identify the noncitizens who appear in the Spreadsheet Report by accessing public criminal dockets.

A defendant has a privacy interest in the facts relating to their criminal prosecution. While individuals who are convicted or plead guilty generally have a lesser interest in their conviction than those who are not convicted, they retain some privacy interest.  *ACLU*, 655 F.3d at 7; *see Reps. Comm.*, 489 U.S. at 753, 771 (allowing withholding of FBI "rap sheet" because of individual's "substantial" personal privacy interest, notwithstanding that "much rap-sheet information is a matter of public record").  In any event, this general practice is not a rule and privacy interests must be evaluated in context rather than in the "abstract." *Brennan Ctr.*, 2021 WL 2711765, at *11 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 683 (D.C. Cir. 2017)).

In the context of the Spreadsheet Report, noncitizens' significant privacy interests in not being associated with ICE's law enforcement efforts extend to not having their names identified through docket searches.  As Defendants explain above, noncitizens have a privacy interest in not being associated with law enforcement efforts that satisfies Defendants' burden at step one of the withholding analysis.  *Supra* at III(1).

17

Those privacy interests are heightened where ICE has released information including, but not limited to, information on the noncitizens' immigration status, immigration histories, visa status, DACA and employment authorization status, citizenship, ethnicity, criminal histories—including pending and uncharged conduct, health history, immigration enforcement activities they were subject to, and family relations and associates. *Supra* at III(1) (citing Pineiro Decl. ¶ 101).

Plaintiff cannot meet its burden at the second step because releasing court case numbers would not serve the public interest, which is limited to revealing information about ICE's operations.  Pineiro Decl. ¶ 80; *see Davis*, 968 F.2d at 1282.  ICE has disclosed significant information about the aggravating factors that led officers to take enforcement actions against noncitizens, including their criminal histories. In light of those disclosures, revealing noncitizens' identities by releasing court case numbers provides no marginal benefit to the public in understanding ICE's operations.  *Contra Brennan Ctr.*, 2021 WL 2711765, at *14 (identifying a public interest in disclosure where DOJ prosecuted the named defendants).

ICE *at least* permissibly withheld the criminal case numbers for all noncitizens who had not been convicted of a charged offense, *e.g.*, Vaughn Index at 3 (noting that a charge had not been adjudicated), and for convictions that do not clearly have a connection to a defendant's unlawful immigration status.  In *Brennan Center*, this Court recognized that a docket number relating to a conviction or guilty plea implicates heightened privacy interests where the government had collected that case based on facts that were not represented on the public criminal docket.  *Id. Brennan Center* considered a database maintained by the Department of Justice that tracked federal criminal cases and information about whether a case related to terrorism.  Those designations were often made at an early stage of a case, and it was "not uncommon for a case that includes a terrorism-related initial program categorization . . . to result only in non-terrorism-related charges

18

or convictions and for the public record in the case to not reflect any connection to terrorism." *Id.* at *5 (quoting agency declaration).  In those circumstances, this Court concluded that it was appropriate for DOJ to withhold the court case number for convictions that did not clearly relate to terrorism because revealing it "would risk not only renewed attention on cases closed years ago, but would cast new and potentially damaging aspersions on those convicted of crimes that previously bore no public connection to terrorism." *Id.* at *14.  Here, criminal case numbers in the Spreadsheet Report include those for many crimes unrelated to an immigration status and not prosecuted by ICE.  *See generally* Vaughn Index (listing avariety of charges, including state and federal cases and misdemeanors and felonies).  Releasing docket numbers of crimes that did not involve a noncitizen's immigration status and relationship with federal immigration enforcement would reveal that a defendant is a noncitizen who, separate from their underlying criminal conviction, interacted with ICE.  Doing so "would cast new and potentially damaging aspersions on those convicted of crimes" that had no public connection to citizenship status, thereby greatly intruding on noncitizens' privacy interests.  *See Brennan Ctr.*, 2021 WL 2711765, at *14.

At a minimum, noncitizens' privacy interests in their identities, as revealed by the criminal case numbers, would outweigh any public interest in disclosure of the criminal case numbers.  As discussed above, third parties have significant privacy interests in their names in law enforcement files, which is heightened when the names appear along with other personal information about the individuals. Unmasking those individuals would not show the public how ICE is operating.  The Court should conclude that ICE properly withheld criminal case numbers under Exemption 7(C).

### 3.  A-NUMBERS AND OTHER IDENTIFYING NUMBERS

ICE properly withheld A-Numbers pursuant to Exemption 7(C) because these personal identification numbers, if disclosed, could "reasonably be expected to constitute an unwarranted invasion of privacy." Pineiro Decl. ¶ 67. An A-Number "is a unique seven-, eight-, or nine-digit

number assigned to a non-citizen by DHS" and serve to identify noncitizens as they engage with the various stages of the immigration system and the various agencies within DHS. *See id*. As these identifying numbers encompass all of noncitizens' interactions with the various arms of DHS, they function in a similar manner to social security numbers (SSN), and noncitizens' "privacy interest in [A-Numbers, as in] one's social security number is self-evident." *Prison Legal News v. Lappin*, 780 F. Supp. 2d 29, 40 (D.D.C. 2011).  ICE, therefore, has met its burden at the second step of the analysis.

Disclosing A-Numbers would present real risks to noncitizens. For instance, an A-Number serves as "an acceptable form of identification for purposes of obtaining a Social Security number." Pineiro Decl. ¶ 67. Moreover, if a noncitizen's A-Numbers were to be disclosed, it can be cross-referenced with all the other non-redacted information within the spreadsheet (like age, immigration status, immigration history, visa information, familial information, employment authorization information, etc.) to discover their identity. *See* Vaughn Index at 66. This can directly lead to them experiencing "substantial harm, embarrassment, inconvenience, or unfairness" by potential bad actors. Pineiro Decl. ¶ 67.

Likewise, other identifying numbers, arrest numbers, and inmate numbers, also qualify under Exemptions 6 and 7(C) because they are particularized numbers that are linked to a noncitizen and would be an unwarranted invasion of privacy if revealed. *Id.* ¶¶ 79-85. All three numbers can be used to identify specific noncitizens, exposing them to potential harassment, embarrassment, or bias due to their status and affiliation with the criminal justice system. Vaughn Index at 72.  In response to the original FOIA request, ICE has already provided unredacted information related to the noncitizen, including enforcement priorities, planned enforcement, and basis for detainment. *Id.* at 73. Thus, the additional disclosure of identifying numbers can be used

in combination with the released information to pinpoint the identities of listed noncitizens, thus fostering an unwarranted invasion of privacy. *Id.*

Plaintiff cannot meet its burden at the second step because there is no countervailing public interest in the A-Numbers or any other identifying number.  The relevant public interest is "shedding light on ICE's performance of its statutory duties as it pertains to the specific information withheld in portions of the records at issue." Pineiro Decl. ¶ 99.  Releasing these identifying numbers would not shed light on how ICE is "categorizing enforcement and removal priorities, what decisions are being made, and the justification for those decisions" or any other statutory responsibilities. *See id.* As a result, there is no public benefit that is gained through the disclosure of these numbers.

Even if Plaintiff could identify a public interest in disclosing A-numbers and other identifying numbers, it would be significantly outweighed by the serious harms that could result from identifying noncitizens. Accordingly, A-numbers and other identifying numbers must be withheld under Exemption 7(C). *See id.*

### 4.  DATES OF BIRTH

ICE properly applied Exemption 7(C) to withhold the dates of birth (DOBs) of noncitizens as personal information that has no public interest and serves as "an unwarranted invasion of privacy" if divulged. *Id.* ¶ 70. As to the privacy factor, "[t]he Supreme Court has made clear that Exemption 6 is designed to protect personal information . . . 'such as place of birth, date of birth ..,'" *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (quoting *Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 600 (1982)), and Exemption 7(c) is even more protective of privacy.  For good reason: the DOBs can be used in conjunction with other information that ICE has released to identify noncitizens, which would violate their privacy rights and potentially expose them to embarrassment, harassment, undue public attention. *See* Pineiro

Decl. ¶ 71. Plaintiff cannot meet its burden of demonstrating a countervailing public interest because disclosure of noncitizens' DOBs would serve no public benefit or shed any light on how ICE is fulfilling its statutory duties, particularly where ICE has already released the ages of noncitizens. *See id.* ¶ 26.

Even if Plaintiff could identify some public interest, the balancing test would weigh in favor of withholding. As ICE has already released noncitizens' ages, *see* Pineiro Decl. ¶ 17, there is no marginal public benefit from learning that ICE conducted an enforcement action against a noncitizen born on August 3, 2000, as opposed to knowing that ICE conducted an enforcement action against at 23-year-old noncitizen, particularly in light of the other significantly personal information ICE has released.

## 5. RESIDENTIAL ADDRESSES

Likewise, ICE appropriately asserts Exemption 7(C) to exclude the residential addresses of noncitizens because they are personal information with no public interest justifying disclosure. Vaughn Index at 222. The addresses withheld include full and partial addresses of certain noncitizens, including street name, house and/or unit number, city and state of residence. *Id.* Disclosing this information would constitute an unwarranted invasion of privacy for the noncitizen listed and other third parties who may currently be or previously have been associated with the residential address. *Id.* at 223. For noncitizens, the public disclosure of their personal address subjects them to significant harm, harassment, intimidation, and unwarranted public judgment by bad actors. *Id.* Third parties not named in the Spreadsheet Report may also experience an unwarranted invasion of privacy because their connection to the residential address could introduce undesired stigma that accompanies an affiliation with law enforcement activities. *Id.*; *see also Stern,* 737 F.2d at 91–92 ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity").  By disclosing this information,

they may be exposed to harassment, criticism, intimidation, or undue public attention that directly violates their privacy rights. *See* Vaughn Index at 223.

Plaintiff cannot meet its burden of demonstrating a public interest that outweighs the privacy concern, because there is no public benefit to the disclosure of the addresses.  Addresses do not reveal any knowledge on how ICE performing its statutory duties or engaging in enforcement activities. *Id*.

Even if Plaintiff could identify some public benefit from disclosure of residential addresses, the privacy interests of third parties would outweigh the public interest.  An address could connect a current or former resident with unlawful activity based on the date the noncitizen resided at the location, which would be a significant intrusion into private interests.

Therefore, the private privacy interest of the noncitizens far outweighs the public interest and ICE properly withheld the addresses under Exemption 7(C).

### 6.  GANG, CARTEL, AND TERRORIST GROUP AFFILIATION

Additionally, ICE properly withheld gang, cartel, and terrorist group affiliations of noncitizens under Exemption 7(C), because disclosure would invade noncitizens' personal privacy without any countervailing public interest. *See* Vaughn Index at 109.With respect to the privacy interest, ICE has shown that any criminal organization affiliation can be used by a bad actor in conjunction with the other demographic information already disclosed by ICE (immigration status, immigration history, DACA information, citizenship, ethnicity, criminal history, involvement in active law enforcement action, etc.) to identify specific noncitizens. *See id.* at 111. If identified, this would subject the individuals to an unwarranted invasion of privacy and violate their interest in "not being associated with ICE law enforcement activities and actions" or "being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion." *Id.* at 110.

23

With respect to the public interest, Plaintiff cannot meet its burden to show there is a public interest in disclosing the names of criminal organization affiliation because it does not speak to the core principal of public interest under FOIA—to "shed[] light on ICE's performance of its statutory duties." *Id*. ICE has disclosed that certain noncitizens have some affiliation with a gang, cartel, or terrorist group. But there is no further marginal public interest in naming specific groups. That is, criminal organization names has no bearing on the "workings of ICE, how it is categorizing enforcement and removal priorities, what decisions are being made, and the justification[s] for those decisions," particularly where ICE has disclosed that a noncitizen is a suspected member of a criminal organization. *See id.*

If the Court concludes otherwise and reaches the balancing test, any small public interest in the disclosure of the name of a noncitizen's criminal organization affiliation is far outweighed by noncitizens' private interest in nondisclosure.   The information is properly redacted pursuant to Exemption 7(C).

### 7. MONIKERS

Finally, ICE properly withheld monikers under Exemption 7(C) because their disclosure would constitute an unwarranted invasion of privacy. With respect to privacy, monikers and "as known as" (AKAs) function in a similar fashion to names—they serve as unique identifiers that are specific to an individual and known in certain communities. *See* Pineiro Decl. ¶ 73. As noted above disclosure of names can lead to unwarranted invasions of privacy. If a noncitizen's moniker or AKA were to be disclosed, it can easily be used in conjunction with the information already provided by ICE to uncover the personal identity of that individual. *Id*. This exposes the noncitizen to the potential harassment, bias, intimidation, and overall undue public attention that Exemption 7(C) is designed to protect them from.

Plaintiff cannot meet its burden of establishing a countervailing public interest, because there is no public interest in the monikers of individuals.  A moniker does not provide any additional knowledge about ICE's function or ability to carry out its statutory duties. *See* Vaughn Index at 106-07.

Even if Plaintiff could identify some public interest in monikers, the invasion of personal privacy interests would outweigh that interest in disclosure. ICE properly withheld noncitizen monikers under Exemption  7(C).

### C.  EXEMPTION 6

All of the withheld information is protected by Exemption 7(c), which is more protective of privacy than its counterpart in the non-law enforcement context, Exemption 6.  Exemption 6 also protected the information, but the Court need not reach this issue if it finds that Defendant has met the law enforcement threshold.  Under Exemption 6, the government can withhold information about individuals in "personnel and medical and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is interpreted broadly, rather than narrowly. *Wash. Post Co.*, 456 U.S. at 599-603.  An individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." *Id.* at 601. Rather, the Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. *Id.* at 602; *see Burton*, 803 F. App'x at 121 (finding alien file records are similar files as they contain "personal identifying information," "immigration status[,] and . . . allegations of domestic abuse"). The Spreadsheet Report at issue qualifies at the very least as a "similar file" under Exemption 6, given the significant amount of personal information contained within. *See supra* at III(B) (explaining noncitizens' privacy interests in, *inter alia*, their names, dates of birth, residential addresses, criminal history).

25

Once the threshold requirement is met, Exemption 6 requires the agency to identify an individual's right to privacy. *See U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  The question is "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Consumers' Checkbook Ctr. for the Study of Servs.*, 554 F.3d at 1050 (cleaned up).  This phrase "includes bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  *Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) (citation omitted) (holding that "customer numbers" are protected by Exemption 6).  Plaintiff then has the burden to show that the public interest outweighs an individual's privacy interest.  But, "disclosure of information about private citizens that is accumulated in various governmental files would reveal little or nothing about an agency's own conduct." *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (cleaned up).

Here, for all the same reasons that the redacted information is deserving of privacy protection under 7(c), it is also exempt under Exemption 6. Individuals have an undisputable privacy interest in not having their personal information disclosed that are contained within "similar files" in the agency's possession. Revealing noncitizens' names, court case numbers, A-numbers and other identifying numbers, dates of birth, residential addresses, gang, cartel, and terrorist group affiliation, and monikers would intrude on those individuals' privacy interests. *See In Def. of Animals v. NIH*, 543 F. Supp. 2d 70, 80 (D.D.C. 2008) ("Exemption 6 allows an agency to withhold documents if they contain personal identifying information, such as 'place of birth, date of birth, date of marriage, employment history, and comparable data.'") (quoting *Wash. Post Co.*, 456 U.S. at 600).  By contrast, Plaintiff cannot identify any public interest in disclosure of that information. "[S]omething, even a modest privacy interest, outweighs nothing every time" under Exemption 6. *Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 879; *see, e.g., Cerveny v. CIA*,

445 F. Supp. 772, 776 (D. Colo. 1978) ("mere mention" of name as subject of CIA file could be damaging under Exemption 6). Where Plaintiff cannot identify any public interest in disclosure, no balancing is required. The Court should enter summary judgment for Defendants on the Exemption 6 withholdings.

## IV.    DEFENDANTS PROPERLY APPLIED EXEMPTION B(7)(E)

ICE also properly withheld limited, sensitive records pertaining to enforcement procedures pursuant to Exemption 7(E). To withhold information under Exemption (7)(E), an agency must demonstrate that release of the "records or information compiled for law enforcement purposes . . . would disclose techniques and procedures for law enforcement investigations or prosecutions," or would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Defendants have explained above, *supra* III, that the Spreadsheet Report was compiled for law enforcement purposes.

"Exemption 7(E) sets a relatively low bar for the agency to justify withholding. . . ." *Blackwell*, 646 F.3d at 42. "Rather than requiring a highly specific burden of showing how the law will be circumvented, Exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (citation and internal punctuation omitted). Publicly known law enforcement techniques and procedures are also exempt under 7(E) if its divulgence "could reduce or nullify their effectiveness." *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (citation omitted), *aff'd*, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013). Also, types of records that are exempt under Exemption 7(E) include "guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even

27

when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).

## A.  SPECIFIC APPREHENSION LOCATIONS

ICE applied Exemption 7(E) to withhold the specific apprehension locations of noncitizens attempting to enter the country illegally. Pineiro Decl. ¶ 114. The withheld information includes "mile markers, roadway addresses and locations, specific lanes of entry at point of entry utilized by the subject noncitizens, as well as the indications utilized by border patrol" that helped identify specific noncitizens. *Id*. ¶ 115. It also contained "law enforcement techniques and procedures, as well as guidelines pertaining to the apprehension of non-citizens entering the U.S." that are not public knowledge. *Id.* This information would provide a roadmap for noncitizens entering the country to circumvent the law because they point to specific "staffing strengths and weaknesses at individual points of entry" and would allow bad actors to identify weaknesses within the border security apparatus and "target or avoid certain places to illegally enter the United States." *Id*. ¶ 117. Furthermore, the disclosure of these records could interfere with DHS security activities and thwart the identification, investigation, and potential removal of noncitizens illegally entering the United States. *Id*. ¶ 118.

With respect to the reasonable risk for the circumvention of the law, courts have held that ICE can withhold specific location information on where an individual was apprehended pursuant to Exemption 7(E). *See, e.g.*, *Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 244–245 (D.D.C. 2020) (holding that ICE's location data, including "data detailing where individuals were apprehended or encountered" if revealed, could be used to circumvent the law, and thus qualified for exclusion under Exemption 7(E)).  ICE likewise appropriately withheld the specific apprehension locations pursuant to Exemption 7(E) in this matter.

28

## B.  ADDRESSES AND ATTEMPTS TO LOCATE NONCITIZENS

The collection of addresses and records of attempts to locate noncitizens also were in "furtherance of ICE's immigration enforcement and removal" procedures and directly contributed to the "apprehension of at-large non-citizens." Pineiro Decl. ¶ 106. Specifically, these records contain private information about where noncitizens are located, details on enforcement measures like the number of officers utilized, when and how addresses are selected, and how the enforcement action will occur. *Id.* ¶ 107. Additionally, they detail "specific investigatory and enforcement processes, tools, considerations, procedures, techniques and guidelines" applied by ERO officers. *Id.* ¶ 108. Disclosure of this information would "reveal techniques and/or procedures for law enforcement investigations" and make publicly available information that can aid bad actors in their desire to circumvent the law. *Id*. ¶¶ 108–110. As ICE explains, "the release of this information could place law enforcement officers and the public at risk, by compromising the security of ICE enforcement actions" and allow for bad actors to take "proactive steps to counter operational and investigative actions . . ." in order to remain at large. *Id*. Disclosing the addresses would heighten the risk that noncitizens and bad actors will detect patterns in ICE's enforcement operations that will aid in their circumvention of the law. *See* Pineiro Decl. ¶ 107; Vaughn Index at 227. Furthermore, any at-large noncitizens referenced in the Spreadsheet Report would benefit from understanding ICE's prior attempts to locate them in order to avoid future enforcement. *See* Pineiro Decl. ¶ 108. As a result, the records will actively "thwart[] ICE's at-large immigration enforcement actions" by aiding bad actors in their circumvention of the law, and ICE appropriately withheld the records under Exemption 7(E). Pineiro Decl. ¶ 111.

### C.  HONORING OF ICE DETAINERS AND REQUESTS AND COOPERATION WITH STATE AND LOCAL LAW ENFORCEMENT

ICE properly asserted Exemption 7(E) for records pertaining to ICE detainers and agency cooperation with state and local law enforcement. This information identifies "specific locations of requests and responses from state and local entities" to ICE communication and details how ICE enforcement and removal proceedings are enacted in response to these requests. Pineiro Decl. ¶ 122. Moreover, imbedded in these records is information pertaining to "specific investigatory and enforcement processes, tools, considerations, procedures, techniques and guidelines" used by ERO officers. *Id.* ¶ 123. The disclosure of this information would reveal sensitive "techniques and/or procedures for law enforcement investigations" that would enable bad actors to easily circumvent the law. *Id.* ¶ 124. Disclosure of these processes and techniques assists anyone seeking to circumvent the law by helping them to take steps "to counter operational and investigative actions taken during enforcement operations, based on the knowledge of which jurisdictions do or do not comply with ICE detainer and other assistance requests. . . ." *Id.* ¶ 124. Furthermore, the disbursement of ICE's communications with state and local law enforcement will help "bad actors in thwarting future enforcement activities" by enabling them to see which jurisdictions "do or do not honor ICE requests," and take proactive steps with this knowledge to circumvent ICE detention. *Id.* ¶ 125.

### D.  GANG, CARTEL, TERRORIST GROUP AFFILIATION, AND MONIKERS

Finally, ICE asserts Exemption 7(E) to prevent disclosure of "specific gang, cartel and terrorism groups" listed noncitizens may be affiliated with, as well as the monikers of those groups. *Id.* ¶ 128. This information is gathered and verified by ICE and other law enforcement agencies through the intelligence and law enforcement review of the criminal organizations. *Id.* ¶ 130. The techniques and methods on how this intelligence is generated and shared between agencies is not

30

public knowledge. *Id.* ¶ 131. If this information were to be revealed, noncitizens and potential bad actors would be made aware of ICE's knowledge of their affiliations, key intelligence sharing and gathering mechanisms, and overall enforcement capabilities. *See id.* This would then reasonably lead to an increased ability by bad actors and noncitizens to circumvent the law by allowing them to take "proactive steps to counter operational and investigative actions" and possibly "curtail[] their involvement with these criminal organizations to avoid detection." *Id.* ¶ 132.  *Cf. Soghoian v. U.S. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) ("Knowing what information is collected, how it is collected, and more importantly, when it is not collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection."). Therefore, ICE's withholding of gang, cartel, and terrorist group affiliation and monikers pursuant to Exemption 7(E) is well justified.

## V.   ICE PROPERLY RELEASED ALL REASONABLY SEGREGABLE INFORMATION

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[E]ven if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'" *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)). Additionally, when an agency is sorting through their records, they "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, ICE confirms that they conducted a meticulous "line-by-line review" in order to evaluate the

information that is exempt from disclosure. *See* Pineiro Decl. ¶ 135. Following this review, ICE properly segregated the information, and all "non-exempt portions" were released. *Id.* ¶ 136.

For example, ICE withheld personally identifiable information pursuant to Exemptions 6 and 7(C), but released significant amounts of information that did not qualify under any exemption, including "information on the non-citizens' immigration status, immigration histories, visa information, DACA and employment authorization information, citizenship, ethnicity, criminal histories included pending and uncharged conduct, health information and immigration enforcement activities against the non-citizens, as well as information on family members and associates of the non-citizens." *Id.* ¶ 101. Therefore, ICE has fulfilled its duty under FOIA and released all reasonably segregable information.

## VI.   FORESEEABLE HARM WOULD RESULT FROM THE RELEASE OF THE EXEMPT INFORMATION

Per the FOIA Improvement Act of 2016, when withholding a responsive record, the government must show that "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) [of FOIA]," or that the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Known as the "foreseeable harm" standard, it applies to all FOIA exemptions except for Exemption 3, which enables the withholding of records "specifically exempted from disclosure by statute." *See id.* § 552(a)(8)(A)(i)(II), 552(b)(3); *Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, No. CV 18-2622 (ABJ), 2021 WL 4502106, at *22 (D.D.C. Sept. 30, 2021). In order to meet the foreseeable harm standard, an agency shall "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 369 (D.C. Cir. 2021) (citations omitted).

Both FOIA Exemptions 6 and 7 identify specific interests that, if disclosed, would cause unreasonable harm. Exemption 6 aims to protect the "unwarranted invasion of personal privacy" through the release of a broad range of "files", § 552(b)(6), while Exemption 7 seeks to prevent potential harms resulting from the disclosure of law enforcement records, *see* 5 U.S.C. § 552(b)(7)(C) ("an unwarranted invasion of personal privacy"); *id.* § 552(b)(7)(E) ("risk [of] circumvention of the law"). In the case at hand, the foreseeable harm from not withholding portions of the responsive record under Exemptions 6 and 7 are clear. By disclosing names, addresses, and other personally identifiable information that qualifies for withholding under Exemptions 6 and 7(C), listed noncitizens and third parties will be exposed to foreseeable harms like harassment, criticism, intimidation and undue public attention that cuts directly against their protected privacy rights. *See* Vaughn Index at 101. Additionally, if information like addresses, apprehension locations, requests from local law enforcement, and criminal group affiliations are not properly withheld under Exemption 7(E), known harms pertaining to the circumvention of law by bad actors and the weakening of the agency's capabilities to conduct immigration enforcement measures would severely impact the overall national security of the United States. *See* Vaughn Index at 247. Therefore, ICE has properly demonstrated the foreseeable harm that would occur as a result from the disclosure of the records.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants.

Dated: August 4, 2023                            Respectfully submitted,

                                                 BRIAN M. BOYNTON
                                                 Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
Trial Attorney (Me. Bar No. 006018)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, D.C. 20005
Telephone: (202) 305-7667
Email: Brian.C.Rosen-Shaud@usdoj.gov

*Counsel for Defendants*

34