**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICA FIRST LEGAL FOUNDATION,

        *Plaintiff*,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

        *Defendants*.

Case No. 21-cv-2168-RDM

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    FOIA PROTECTS ALL PERSONS' PRIVACY INTERESTS ......................................... 2

II.   DEFENDANTS COMPILED THE SPREADSHEET REPORT FOR LAW
      ENFORCEMENT PURPOSES ................................................................................... 4

III.  DEFENDANTS PROPERLY APPLIED EXEMPTIONS 6 AND 7(C) TO
      WITHHOLD PERSONAL IDENTIFYING INFORMATION ........................................ 8

      A.    Names .............................................................................................................. 9

      B.    Court Case Numbers ...................................................................................... 14

      C.    Dates of Birth ................................................................................................. 16

      D.    Gang, Cartel, and Terrorist Group Affiliation ............................................. 18

      E.    Residential Addresses .................................................................................... 19

IV.   DEFENDANTS PROPERLY APPLIED EXEMPTION B(7)(E) .................................. 20

      A.    Specific Apprehension Locations .................................................................. 20

      B.    Addresses and Attempts to Locate Noncitizens............................................ 21

      C.    Gang, Cartel, Terrorist Group Affiliation, and Monikers ............................ 22

V.    FORESEEABLE HARM WOULD RESULT FROM THE RELEASE OF THE
      EXEMPT INFORMATION ...................................................................................... 23

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
  950 F. Supp. 2d 221 (D.D.C. 2013) ........................................................................ 6

*Am. Immigr. Council v. U.S. Immigr. & Custom Enf't.*,
  464 F. Supp. 3d 228 (D.D.C. 2020) ................................................................ 17, 20

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) .................................................................................. 21

*Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*,
  No. CV 18-1860 (RDM), 2021 WL 2711765 (D.D.C. July 1, 2021) ............................ *passim*

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of Just.*,
  No. CV 18-1860 (RDM), 2020 WL 1189091 (D.D.C. Mar. 12, 2020) ..................... 7

*Burton v. Wolf*,
  803 F. App'x 120 (9th Cir. 2020) ........................................................................... 10

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ......................................................................... 13, 21

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) .............................................................................. 4, 5

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. HHS*,
  554 F.3d 1046 (D.C. Cir. 2009) ............................................................................. 12

*Ctr. for Investigative Reporting v. U.S. Immigr. & Customs Enf't*,
  No. 1:18-CV-01964 (CJN), 2019 WL 6498817 (D.D.C. Dec. 3, 2019) ................... 9

*Davis v. U.S. Dep't of Just.*,
  968 F.2d 1276 (D.C. Cir. 1992) ......................................................................... 11, 12

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
  777 F.3d 518 (D.C. Cir. 2015) ................................................................................. 6

*FBI v. Abramson*,
  456 U.S. 615 (1982) ...................................................................................... 3, 6, 8

*Graff v. FBI*,
  822 F. Supp. 2d 23 (D.D.C. 2011) ........................................................................ 3-4

*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) ............................................................................. 20

*Nat'l Archives & Recs. Admin. v. Favish*,
    541 U.S. 157 (2004) ................................................................................ 2, 4, 11

*People for the Ethical Treatment of Animals v. NIH*,
    745 F.3d 535 (D.C. Cir. 2014) ............................................................................. 9

*Prison Legal News v. Exec. Off. for U.S. Att'ys*,
    628 F.3d 1243 (10th Cir. 2011) ......................................................................... 11

*Pub. Emps. for Env't Resp. v. U.S. Dep't of the Interior*,
    No. 06-182, 2006 WL 3422484 (D.D.C. Nov. 28, 2006) ..................................... 10

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
    740 F.3d 195 (D.C. Cir. 2014) ......................................................................... 5-6

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ........................................................................................... 8

*Sack v. U.S. Dep't of Def.*,
    823 F.3d 687 (D.C. Cir. 2016) ............................................................................. 6

*Soghoian v. U.S. Dep't of Just.*,
    885 F. Supp. 2d 62 (D.D.C. 2012) ..................................................................... 23

*Southam News v. U.S. INS*,
    674 F. Supp. 881 (D.D.C. 1987) .......................................................................... 9

*Tuffly v. U.S. Dep't of Homeland Sec.*,
    870 F.3d 1086 (9th Cir. 2017) .............................................................. 3, 9, 10, 12

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*,
    489 U.S. 749 (1989) ............................................................................ 9, 11, 12, 18

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991) ..................................................................................... 3, 11

*U.S. Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ........................................................................................... 3

*Union Leader Corp. v. U.S. Dep't of Homeland Sec.*,
    749 F.3d 45 (1st Cir. 2014) ........................................................................... 9, 10

*United States v. Texas*,
    143 S. Ct. 1964 (2023) ........................................................................................ 7

*Vazquez v. U.S. Dep't of Just.*,
    887 F. Supp. 2d 114 (D.D.C. 2012), *aff'd*, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013) ...... 21

**Statutes**

5 U.S.C. § 552 .................................................................................................. 2, 4, 20

**Other Authorities**

Memo. from Alejandro N. Mayorkas, Sec'y, U.S. Dep't of Homeland Sec., to U.S. Immigr. &
     Customs Enf't; U.S. Customs & Border Prot.; U.S. Citizenship & Immigr. Servs.; Off. of
     Strategy, Pol'y, & Plans; Off. for Civ. Rts. & Civ. Liberties; and Priv. Off., Guidelines for the
     Enforcement of Civil Immigration Law (Sept. 30, 2021),
     https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf ..................................... 5

Memo. from Tae D. Johnson, Acting Dir., U.S. Immigr. & Customs Enf't, to All ICE
     Employees, Interim Guidance: Civil Immigration Enforcement and Removal Priorities
     (Feb. 18, 2021),
     https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-
     enforcement_interim-guidance.pdf .......................................................................... 5, 7

**INTRODUCTION**

For approximately eight months, Immigration and Customs Enforcement (ICE) directed its Enforcement and Removal Operations (ERO) officers to receive approval from their supervisors to take enforcement actions against noncitizens who fell outside of three priority groups for enforcement: individuals who posed threats to national security, border security, and public safety. The information was compiled into an Excel spreadsheet (the Spreadsheet Report) that contains over 50,000 rows of information, including the following information about noncitizens: names, A-numbers, dates of birth, age, immigration history, visa status, DACA and employment authorization status, citizenship, ethnicity, charged and uncharged criminal conduct, health history, and family relations and associates. ICE has diligently processed the Spreadsheet Report. As outlined in the detailed *Vaughn* Index, Defendants released large amounts of deeply personal information about noncitizens to inform the public about how ICE carried out its statutory duties and responsibilities. ICE withheld limited amounts of information where disclosure would not shine light on ICE's operations, would cause undue harm to third parties' personal privacy, or would disclose law enforcement techniques, procedures, or guidelines and risk circumvention of the law.

Though the parties conferred in good faith and narrowed the issues for the Court's resolution, Plaintiff proceeded with its challenge to certain withholdings, for which it presents some novel legal arguments that the Court should reject. *First*, the Spreadsheet Report was clearly created for law enforcement purposes because ERO officers made the entries to obtain approval for enforcement actions, because the Spreadsheet Report contains various categories of information pertaining to noncitizens developed and utilized by ERO during its immigration enforcement activities, and because the Spreadsheet Report was compiled to inform the

1

development of future enforcement guidance. *Second*, the text of FOIA cannot support Plaintiff's argument that noncitizens lack privacy interests in their personal information, and the Supreme Court has repeatedly held that noncitizens have such interests. *Third*, ICE lawfully withheld particularly sensitive personal information that could identify noncitizens, including noncitizens' names, monikers, partial dates of birth, court case numbers, residential addresses, and affiliation information. *Fourth*, Defendants properly withheld information about law enforcement techniques, procedures, and guidelines that could reasonably be expected to risk circumvention of the law if disclosed. For the reasons stated below and in Defendants' motion for summary judgment, the Court should grant Defendants' motion and deny Plaintiff's motion for summary judgment.[1]

## ARGUMENT

## I.    FOIA PROTECTS ALL PERSONS' PRIVACY INTERESTS

Plaintiff's argument that FOIA does not protect noncitizens' privacy interests lacks support. Start, of course, with the text of the Act: Exemptions 6 and 7(C) refer to "personal privacy" of those named in certain government records. 5 U.S.C. § 552(b)(6); (b)(7)(C). Noncitizens and citizens are both "persons" who have "personal privacy." *See id.*; *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165 (2004) ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea.") (citation omitted). Plaintiff has no textual basis to argue that FOIA's privacy protections are limited to citizens.

---

[1] After Defendants filed their motion, Plaintiff abandoned challenges to ICE's withholding of visa approval or denial information (withheld pursuant to Exemption 3), A-numbers and other identifying numbers (withheld pursuant to Exemptions 6 and 7(C)), information about the honoring of ICE detainers and cooperation with law enforcement entities (withheld pursuant to Exemption 7(E)), as well as challenges to full residential addresses (withheld pursuant to Exemptions 6, 7(C), and 7(E)), but Plaintiff still seeks city and state information. *See* Pl.'s Cross-Mot. for Partial Summ. J. & Opp'n to Defs.' Mot. for Partial Summ. J. at 4 n.2, ECF No. 28-1.

Because the plain language of the Act clearly protects all persons' privacy interests, no narrowing construction comes into play. *Contra* Pl.'s Cross-Mot. for Partial Summ. J. & Opp'n to Defs.' Mot. for Partial Summ. J. at 6, ECF No. 28-1 ("Pl.'s Mot.") (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).

Rather than the text of FOIA, Plaintiff quotes a few instances where courts used the term "citizen" when discussing FOIA protections. Pl.'s Mot. at 5-6. None of these courts, however, endorsed the argument that Plaintiff raises here that only citizens are protected by Exemptions 6 and 7(C). Rather, courts have unanimously held the contrary. In two of the seminal cases about Exemption 6, the Supreme Court recognized that FOIA protects noncitizens' personal privacy interests. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991). In *Washington Post*, the Supreme Court acknowledged that Iranian nationals had protected personal privacy interests in their citizenship information. *See* 456 U.S. at 602. After determining that the challenged records fell within the scope of Exemption 6, the Court remanded the case for lower courts to balance the public interest in disclosure against the foreign nationals' personal privacy interests. *Id.* at 602-03. Similarly in *Ray*, the Supreme Court held that FOIA protected the personal privacy interests of Haitian nationals who had come to the United States unlawfully and been involuntarily returned to Haiti. 502 U.S. at 178. The Court determined that the "public interest has been adequately served by disclosure of the redacted [records]" such that releasing unredacted records, including the noncitizens' names, "would therefore constitute a clearly unwarranted invasion of the interviewees' privacy." *Id.*

If there was any doubt, Plaintiff itself cited cases where courts have recognized that FOIA protects noncitizens' privacy interests. Pl.'s Mot. at 7. And there are many more. *E.g.*, *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1091 (9th Cir. 2017); *Graff v. FBI*, 822 F. Supp. 2d

23, 34 (D.D.C. 2011) ("[F]oreign nationals are entitled to the privacy protections embodied in FOIA.") (citing cases). Particularly because Plaintiff has not identified a single case where a court has concluded that noncitizens lack privacy interests under FOIA, the Court should easily conclude that noncitizens have privacy interests in their personal identifying information in the Spreadsheet Report.[2]

## II.   DEFENDANTS COMPILED THE SPREADSHEET REPORT FOR LAW ENFORCEMENT PURPOSES

The Spreadsheet Report comfortably clears the threshold for Exemptions 7(C) and 7(E) because the information was "compiled for law enforcement purposes[.]" *See* 5 U.S.C. § 552(b)(7)(A)-(F); Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 7-9, ECF No. 26-1 ("Defs.' Mot."). The parties agree that ICE has a principal law enforcement function and is entitled to "special deference in [its] claims of law enforcement purpose." Pl.'s Mot. at 9 (citation omitted); *see* Defs.' Mot. at 8.

1. Defendants have provided adequate factual support to establish both "under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. FBI,* 867 F.3d 111, 119 (D.C. Cir. 2017). The information contained in the Spreadsheet Report "pertains to ICE Enforcement and Removal Operations (ERO) at it pertains to civil immigration enforcement and removal priorities." *See* Decl. of Fernando Pineiro ¶ 14, ECF No. 26-2 ("Pineiro Decl."). The Spreadsheet Report "contains a compilation of information on each non-citizen subject to

---

[2] Plaintiff's analogies to the Government's plenary authority over immigration matters and decreased Constitutional protections at the border, Pl.'s Mot. at 6-7, lack relevance given the clear text of FOIA. In any event, Plaintiff's references are further afield because "the statutory privacy right protected by Exemption 7(C) goes beyond the common law and the Constitution." *Favish*, 541 U.S. at 170.

removal". *See id.* ¶ 15. The Spreadsheet Report also includes… "next enforcement and removal steps." *Id.* ¶ 16.   ERO officers created the spreadsheet entries to seek "approv[al] or deni[al]" of "requests to engage in" specific enforcement activities against specific noncitizens. *See id.* Supervisors reviewed the entries and approved or denied those requests. *See id.* It is hard to imagine a more direct connection between a record and an enforcement proceeding. *See Clemente*, 867 F.3d at 119.

The spreadsheet entries were also collected into weekly reports for agency leadership, as the agency was designing long-term immigration enforcement priorities. This is another law enforcement purpose. *See* Pineiro Decl. ¶ 14 (citing Memo. from Tae D. Johnson, Acting Dir., U.S. Immigr. & Customs Enf't, to All ICE Employees, Interim Guidance: Civil Immigration Enforcement and Removal Priorities (Feb. 18, 2021), available at https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf ("Johnson Memo.")). Secretary Mayorkas issued those new priorities in September 2021. Memo. from Alejandro N. Mayorkas, Sec'y, U.S. Dep't of Homeland Sec., to U.S. Immigr. & Customs Enf't; U.S. Customs & Border Prot.; U.S. Citizenship & Immigr. Servs.; Off. of Strategy, Pol'y, & Plans; Off. for Civ. Rts. & Civ. Liberties; and Priv. Off., Guidelines for the Enforcement of Civil Immigration Law (Sept. 30, 2021), available at https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf. Those guidelines aim to protect the public and prevent criminal activity, by focusing ICE's limited enforcement resources on threats to public safety, national security, and border security. *Id.* at 2. That indisputably is a law enforcement purpose, because the "ordinary understanding of law enforcement includes proactive steps designed to prevent criminal activity and to maintain security." *See Pub. Emps. for Env't Resp. v. U.S. Section,*

*Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (ellipsis and citation omitted).

Even if the Court disagreed that this review process was an independent, cognizable law enforcement purpose, the entries submitted by ERO officers certainly had a law enforcement purpose and "information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a non-law-enforcement purpose." *Abramson*, 456 U.S. at 631-32.

2. Defendants' declaration and the *Vaughn* Index are unlike those documents in the primary case on which Plaintiff relies. Pl.'s Mot. at 9 (citing *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 246 (D.D.C. 2013) ("*AIC*")). In *AIC*, the Court denied DHS's motion for summary judgment given the agency's "refusal to specifically identify the locations of many of their 7(E) withholdings" in the *Vaughn* Index. 950 F. Supp. 2d at 245. By contrast, the Pineiro declaration explains that all entries in the Spreadsheet Report were compiled for law enforcement purposes. Pineiro Decl. ¶¶ 14-16, 57-59. The Spreadsheet Report contained information on noncitizens subject to removal and on next enforcement and removal steps, *see id.* ¶¶ 14-16. ERO officers created the spreadsheet entries to seek authorization for enforcement actions, *see id.* ¶¶ 14-16, 57-59, that would "deter illegal activity and ensure national security," *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016). And Defendants compiled the Spreadsheet Report to inform the development of the Secretary's enforcement guidance designed to "prevent crime and keep people safe," *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522-23 (D.C. Cir. 2015). *AIC* is inapposite.

3. Plaintiff's argument that the Spreadsheet Report had a political purpose is misplaced. Pl.'s Mot. at 10-11. Managerial oversight directly relates to agency operations; nothing about supervisory review is "political." Additionally, the officials who approved or denied the requested enforcement actions were Field Office Directors or Special Agents in Charge, career officials, not political appointees. *See* Johnson Memo. at 6. ICE's Spreadsheet Report is like the DOJ database at issue in *Brennan Center*. There, DOJ maintained a "database to categorize and to track information about cases in which the ninety-four U.S. Attorneys' Offices are involved." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*, No. CV 18-1860 (RDM), 2021 WL 2711765, at *2 (D.D.C. July 1, 2021) (quotation marks omitted). The Court found the plaintiff's argument about whether the database was compiled for law enforcement purposes "[un]persuasive" because the database served various purposes, including assessing "resource allocations and provid[ing] an overview for prosecutors of the aggregate criminal case landscape." *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of Just.*, No. CV 18-1860 (RDM), 2020 WL 1189091, at *4-5 (D.D.C. Mar. 12, 2020) (citation omitted). Here, the Spreadsheet Report entries pertained to active law enforcement activities, a compilation of information on noncitizens subject to removal, and next removal and enforcement steps and activities to be performed. *See* Pineiro Decl. ¶¶ 14-16.  Not only did the Spreadsheet Report aggregate requested enforcement actions, but it was also used for more specific law enforcement purposes: approval of specific enforcement actions and crafting long-term immigration enforcement priorities. *See id.* ¶ 14 (citing Johnson Memo.); *see generally United States v. Texas*, 143 S. Ct. 1964 (2023) (explaining that the "Civil Enforcement Priorities" guidance, informed by

the data in the Spreadsheet Report, was the Executive's effort to prioritize limited law enforcement resources to arrest and remove noncitizens and not subject to judicial review).[3]

Defendants, accordingly, have met the initial Exemption 7 threshold because the Spreadsheet Report was compiled for law enforcement purposes.  Alternatively, if the Court determines that the Excel spreadsheet itself was not compiled for a law enforcement purpose, all entries in the spreadsheet still qualify because ERO officers drafted them during the course of law enforcement activities and before the entries were compiled into the Spreadsheet Report. *See Abramson*, 456 U.S. at 631-32.

## III.   DEFENDANTS PROPERLY APPLIED EXEMPTIONS 6 AND 7(C) TO WITHHOLD PERSONAL IDENTIFYING INFORMATION

As Defendants explained in their motion for summary judgment and elaborate on below, Exemption 7(C) protects the privacy withholdings in the law enforcement spreadsheet. But to the extent that the Court determines that the spreadsheet was not compiled for law enforcement purposes, Exemption 6 also fully protects those withholdings, Defs.' Mot. at 25-27. Plaintiff has conceded that Defendants' arguments for withholding under Exemption 6 carry the full force as for those under Exemption 7(C), Pl.'s Mot. at 11 n.3 ("ICE's arguments under Exemption 7(C) are *equally applicable* to its attempt to withhold this information under Exemption 6.") (emphasis added). *But see* Defs.' Mot. at 21, 25 (flagging that Exemption 7(C) is more protective than Exemption 6).[4]

_____

[3] Plaintiff does not define the term "political." In case the intended meaning refers to values, the Supreme Court instructed that at "each" of the "various stages in the deportation process," "the Executive has discretion to abandon the endeavor," including by "exercising that discretion for humanitarian reasons or simply for its own convenience." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999).

[4] To be clear, Plaintiff has waived any argument that ICE's withholdings are unlawful because a different standard applies to withholdings under Exemption 6.

A.      Names

ICE properly withheld noncitizens' names pursuant to Exemptions 6 and 7(C) because releasing the names risks significant intrusion on noncitizens' privacy interests, and those of third parties, without furthering the public interest. Defs.' Mot. at 12-17.

1. Despite its earlier argument, Plaintiff appears to concede that noncitizens named in the Spreadsheet Report have privacy interests in not being identified in ICE records relating to proposed enforcement actions, because the main authority Plaintiff quotes states that noncitizen "arrestees have a cognizable privacy interest in their names." *See* Pl.'s Mot. at 19-21 (quoting *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 53 (1st Cir. 2014)). Moreover, Plaintiff ignores the Supreme Court's statement that criminals have a "substantial" personal privacy interest in a federal law enforcement "rap sheet," even where "much rap-sheet information is a matter of public record." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 753, 771 (1989). And Plaintiff has no answer for Defendants' argument that individuals named in civil investigations, like the enforcement actions proposed in the Spreadsheet Report, have strong privacy interests. *See* Defs.' Mot. at 13 (citing *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 541-42 (D.C. Cir. 2014)). This Court has affirmed that noncitizens have privacy interests in not being named in federal law enforcement records; Plaintiff's contrary argument should be rejected. *Ctr. for Investigative Reporting v. U.S. Immigr. & Customs Enf't*, No. 1:18-CV-01964 (CJN), 2019 WL 6498817, at *5 (D.D.C. Dec. 3, 2019); *Southam News v. U.S. INS*, 674 F. Supp. 881, 887 (D.D.C. 1987); *see also Tuffly*, 870 F.3d at 1091.

2. Noncitizens named in the Spreadsheet Report have more significant privacy interests than those in *Union Leader*. The records in *Union Leader* were limited to I-213 forms, which documented arrests of six noncitizens in a national operation that ICE had publicized. 749 F.3d at

9

48-49. The First Circuit based its holding that the noncitizens had "attenuated" privacy interests on "the limited nature of the Union Leader's proposed investigation" of those six I-213 forms. *Id.* at 53; *see Tuffly*, 870 F.3d at 1098 n.13 ("The only privacy interests discussed in *Union Leader* were the individuals' privacy interests in the fact of their prior arrests and convictions."). ICE's withholding of names in the Spreadsheet Report protects more significant privacy interests for over 50,000 noncitizens subject to enforcement actions nationwide over a period of approximately eight months. ICE has already released significant amounts of personal information for those noncitizens that implicates their privacy interests, as detailed in the *Vaughn* Index and Pineiro declaration, including: their immigration status, *Burton v. Wolf*, 803 F. App'x 120, 121 (9th Cir. 2020), immigration histories, visa status, DACA and employment authorization status, citizenship, ethnicity, criminal histories—including pending and uncharged conduct, *Brennan Ctr.*, 2021 WL 2711765, at *10-11, health history, *Pub. Emps. for Env't Resp. v. U.S. Dep't of the Interior*, No. 06-182, 2006 WL 3422484, at *4 n.4 (D.D.C. Nov. 28, 2006), immigration enforcement activities they were subject to, and family relations and associates. *See* Pineiro Decl. ¶ 101. Noncitizens therefore have stronger privacy interests in not being named in the Spreadsheet Report than did the six noncitizens had in their identities in *Union Leader*. *See Tuffly*, 870 F.3d at 1098 n.13.

3. Additionally, not all noncitizens listed in the Spreadsheet Report were subject to the proposed enforcement actions. *Contra* Pl.'s Mot. at 21. The *Vaughn* Index includes a sample of the "[d]enials" tab of the spreadsheet, *e.g.*, *Vaughn* Index at 2, ECF No. 26-3, where career officials did not approve the enforcement action. Pineiro Decl. ¶ 24. The individuals named in the "denials" tab have even more heightened privacy interests, akin to those listed in law enforcement records for uncharged conduct, *Brennan Ctr.*, 2021 WL 2711765, at *10-11, and withholding these names was appropriate even under Plaintiff's narrow (and flawed) theory of privacy interests, *see* Pl.'s

Mot. at 19-20. Moreover, the Spreadsheet Report contains requests to take various types of enforcement actions, so Plaintiff's suggestion that all noncitizens named in the document were all removed does not follow.[5] In any event, Plaintiff's assumption about removal is of little relevance, because the Supreme Court has recognized that foreign nationals retain a protected privacy interest in their personal information in law enforcement files even after their removal.  *See Ray*, 502 U.S. at 178.

4. The parties agree that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm.*, 489 U.S. at 773); *see* Pl.'s Mot. at 21. Plaintiff bears the burden of establishing a significant, cognizable public interest in the information and that the information is likely to advance that interest. *See* Defs.' Mot. at 5, 12; *Favish,* 541 U.S. at 172. Plaintiff's discussion of the public interest, however, ignores that ICE has already released significant amounts of information about noncitizens in the Spreadsheet Report. *See* Pl.'s Mot. at 21-23. Defendants' disclosures have served the public interest by informing the public about ICE's operations. *See Prison Legal News v. Exec. Off. for U.S. Att'ys*, 628 F.3d 1243, 1251 (10th Cir. 2011) (alleged public interests were already satisfied by materials viewed and reported on by media related to trial; privacy interests outweighed any "incremental addition" to public knowledge). The Spreadsheet Report contains the information that ERO officers relied on to seek authorization for enforcement operations, including specific information about noncitizens' criminal histories.  *See* Pineiro Decl. ¶¶ 99-101; *Vaughn* Index at

---

[5] Plaintiff abandons a challenge to ICE's withholdings on names of third parties listed in the Spreadsheet Report, but has not addressed the impact of the release of noncitizens' personal information on other third parties based on their reported relationship with the noncitizens. Pl.'s Mot. at 20; *see* Defs.' Mot. at 14-15 (identifying examples in the *Vaughn* Index of third parties named in the Spreadsheet Report).

212-13. Releasing ERO officers' justifications, as well as supervisors' reasons for denying certain requests, *e.g.*, *Vaughn* Index at 2, has shown the public how ICE made decisions. *See Davis*, 968 F.2d at 1282. As the Ninth Circuit concluded in *Tuffly*, the "release of the names would not itself advance the public interest in understanding the impact of the government's [enforcement] policies." 870 F.3d at 1098; *see also Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. HHS*, 554 F.3d 1046, 1051 (D.C. Cir. 2009) ("'[I]nformation about private citizens . . . that reveals little or nothing about an agency's own conduct' does not serve a relevant public interest under FOIA.") (quoting *Reps. Comm.*, 489 U.S. at 773). There is no reason for this Court to depart from *Tuffly*.

Plaintiff's only concrete argument on the public interest is that releasing names will allow the public to determine if ICE removed a noncitizen multiple times. *See* Pl.'s Mot. at 21-23.[6] But Plaintiff ignores that the Spreadsheet Report contains this information. *E.g.*, *Vaughn* Index at 5 ("Basis for ICE Enforcement Action: Subject previous voluntarily removed by Border Patrol via Nogales, Arizona on or about 08/21/2006 and 08/25/2006."); *id.* at 10 (explaining that noncitizen had twice before been removed to El Salvador); *id.* at 34 ("USBP removed (redacted-last name) from the United States on November 1, 2013."); *id.* at 193 ("Justification Immigration Description: (Redacted-last name) has been removed from the U.S. to Mexico four times most recently on 2016-11-24."); *id* .at 205 (listing the four instances when the noncitizen was removed to Mexico); *id.* at 233 ("Subject was Expedited removed back to Mexico on March 24, 2015."). As the *Vaughn* Index belies Plaintiff's only non-conclusory argument, the Court should determine that Plaintiff failed to meet its burden to establish a public interest in noncitizens' names.

---

[6] For example, "further details could have been elicited, had ICE not withheld names" lacks required specificity, particularly considering the substantial information about noncitizens' criminal and immigration histories in the Spreadsheet Report. *See generally Vaughn* Index.

5. Plaintiff's reliance on *CREW* is unavailing. Pl.'s Mot. at 22 (citing *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("*CREW*")). There, the D.C. Circuit simply rejected a categorical rule that agencies can withhold law enforcement records in full when individuals are named in them. *See CREW*, 746 F.3d at 1096. The issue of whether the government properly withheld those records, or specific information within them such as names, under Exemption 7(C) was left to the district court on remand. *See id.* Defendants have not categorically withheld the Spreadsheet Report, as DOJ did with the records in *CREW*. Rather, ICE released significant amounts of information in the Spreadsheet Report and only withheld limited exempt information.

6. If the Court reaches the balancing stage of the inquiry, which it need not because Plaintiff cannot identify a cognizable public interest in the names of noncitizens, the privacy interests would prevail.  The general interest that noncitizens have in not being identified in law enforcement files, is heightened here because their names appear along with significant personal information about the individuals. Those revelations about personal information would outweigh any marginal public information revealed about ICE's operations.

7. Plaintiff does not separately address Defendants' withholdings of monikers.[7] Pl.'s Mot. at 23 n.12. For the reasons Defendants previously explained, monikers can be connected to specific individuals by certain populations and releasing monikers would not further the public's understanding of ICE operations. *See* Defs.' Mot. at 24-25. The public would not be better informed about federal immigration enforcement by learning that a noncitizen's gang name was Larry, as opposed to Moe or Curly.

---

[7] ICE also withheld moniker information under Exemption 7(E).

The Court should conclude that ICE properly withheld names under Exemptions 6 and 7(C).[8]

## B.  Court Case Numbers

Defendants properly withheld all criminal docket numbers under Exemptions 6 and 7(C), because they do not further the public's understanding of ICE operations and they intrude on noncitizens' personal privacy interests. Defs.' Mot. at 17-19.

1. As an initial mater, Plaintiff concedes that the prime purpose of seeking docket numbers is to use them to identify noncitizens. *See* Pl.'s Mot. at 12-13. For that reason, withholding docket numbers implicates the discussion, above, that noncitizens have privacy interests in not being identified in law enforcement records. This Court has found that all individuals have a privacy interest in not being identified through a criminal docket number, *Brennan Center*, 2021 WL 2711765, at *3-4, and Plaintiff concedes that noncitizens have at least some privacy interests, Pl.'s Mot. at 13. Plaintiff does not respond to Defendants' argument that old criminal convictions are practical obscure, which heightens the privacy interests at stake. *See* Defs.' Mot. at 14.

2. Plaintiff fails to meet its burden of establishing a cognizable and substantial public interest because it does not connect curiosity about dockets to an understanding of ICE's operations. *See* Pl.'s Mot. at 13 (discussing the "public interest in dockets"). ERO officers created detailed records justifying their requests to take enforcement actions against noncitizens and the Spreadsheet Report reflects whether managers approved or denied those requests. *See generally Vaughn* Index. Those records inform the public about ICE's operations, specifically the reasons

---

[8] Plaintiff is wrong to say that "many entries in ICE's spreadsheet" do not contain noncitizens' first and last names. *Contra* Pl.'s Mot. at 20. Column one in each row of the Spreadsheet Report "consists of the name of the non-citizen at issue (Last, First, Middle)." Pineiro Decl. ¶ 17.

why ICE did or did not take an enforcement action against noncitizens. The Spreadsheet Report, with its significant details about specific noncitizens and proposed enforcement actions, is unlike the database in *Brennan Center*, which the Court determined lacked necessary details for the public to determine whether there was a pattern in how DOJ treated proceedings relating to terrorism. *See* 2021 WL 2711765, at *9. The public needed to examine criminal dockets, the Court found, to learn how DOJ was operating. *See id.* Unlike in *Brennan Center*, ICE did not handle the underlying criminal prosecutions. The Spreadsheet Report provides a fulsome record of the ICE's decision-making, as it pertains to ICE's immigration enforcement authorities and duties, such that revealing docket numbers provides no marginal public benefit.

Even if the Court reaches the balancing test, the significant privacy interests implicated by being named in law enforcement files outweighs any marginal benefit to the public's understanding of agency operations, and the Court should uphold Defendants' redaction of the criminal docket numbers.[9]

3. At minimum, ICE properly withheld docket numbers for cases where noncitizens were not convicted of a crime, and for convictions that do not clearly have a connection to a defendant's unlawful immigration status. Defendants' position follows from *Brennan Center*, where this Court instructed that a law enforcement agency may properly withhold a public docket number if disclosing the number would reveal information about new, uncharged conduct for an individual. 2021 WL 2711765, at *14. In *Brennan Center*, DOJ had collected docket numbers for cases that it classified as having a terrorism connection at a very early stage in proceedings. *Id.* at *5. It was "not uncommon for a case that includes a terrorism-related initial program categorization . . . to

---

[9] ICE agrees with Plaintiff that "the docket numbers in the records here are ancillary to [Plaintiff's] request." Pl.'s Mot. at 14. That fact further cuts against Plaintiff's argument that releasing the docket numbers is required to further the public's understanding of ICE's operations.

result only in non-terrorism-related charges or convictions and for the public record in the case to not reflect any connection to terrorism." *Id.* (quoting agency declaration). This Court concluded that it was appropriate for DOJ to withhold the court case number for convictions that did not clearly relate to terrorism because revealing it "cast new and potentially damaging aspersions on those convicted of crimes that previously bore no public connection to terrorism." *Id.* at \*14. This scenario exists for many noncitizens named in the Spreadsheet Report. Many of the criminal case numbers are for crimes unrelated to an immigration status. *See generally Vaughn* Index (detailing many different criminal charges, including state and federal cases and misdemeanors and felonies). Releasing docket numbers of crimes that did not involve a noncitizen's immigration status and relationship with ICE would reveal that a defendant is a noncitizen. Doing so "would cast new and potentially damaging aspersions on those convicted of crimes" that have no public connection to citizenship status, thereby greatly intruding on noncitizens' privacy interests. *See Brennan Ctr.*, 2021 WL 2711765, at \*14. *Brennan Center* supports Defendants' withholdings.

### C. Dates of Birth

Plaintiff has narrowed its challenge to Defendants' withholding of dates of birth to only request the month and year of birth. Pl.'s Mot. at 24. That information is still properly withheld under Exemptions 6 and 7(C), because ICE has released noncitizens' ages. *See* Defs.' Mot. at 21-22.

1. Individuals have a privacy interest in their month and year of birth. Added to the wide range of information in the spreadsheet, including the area of the enforcement action, country of birth, country of origin, entry data, and immigration history, a month and year of birth could allow certain individuals to be identified, even if their names are withheld. *See Vaughn* Index at 217; Pineiro Decl. ¶ 71. Anyone who has picked up a prescription at a pharmacy or called a doctor's

office to obtain personal medical records knows that a date of birth has significant privacy value. Even releasing a partial date of birth risks an individual's personal privacy, particularly considering the other information that ICE has released in the Spreadsheet Report.

2. Considering that there is a privacy interest in an individual's month and year of birth, it must be balanced against the public interest in disclosure. There is no public interest in releasing this information because ICE has fully informed the public about its law enforcement operations by releasing noncitizens' ages. *See* Pineiro Decl. ¶ 26. Plaintiff makes only the conclusory point that releasing month and year of birth "will allow the public to assess better the ages of those for whom ICE allocates resources for removal." Pl.'s Mot. at 25. To what end? Plaintiff provides no substantive response to Defendants' argument that releasing the age of noncitizens in the Spreadsheet Report fully serves the public interest in understanding how ICE operates. *See* Defs.' Mot. at 22 ("[T]here is no marginal public benefit from learning that ICE conducted an enforcement action against a noncitizen born [i]n August . . . 2000, as opposed to knowing that ICE conducted an enforcement action against [a] 23-year-old noncitizen."). In fact, in the primary authority that Plaintiff cites, this Court determined that "the age of the individuals . . . is indistinguishable from their year of birth," but the federal agency had not disclosed age. *See Am. Immigr. Council v. U.S. Immigr. & Custom Enf't.*, 464 F. Supp. 3d 228, 239 (D.D.C. 2020). Defendants have. As disclosure would not serve the public interest, ICE properly withheld noncitizens' months and years of birth in the Spreadsheet Report.

**D.  Gang, Cartel, and Terrorist Group Affiliation**

Defendants properly withheld gang, cartel, and terrorist group affiliation under Exemptions 6 and 7(C), because they do not further the public's understanding of ICE operations and they intrude on personal privacy interests. Defs.' Mot. at 23-24.[10]

1. Plaintiff's categorical argument that gang and cartel members have no privacy interests ignores precedent. *See* Pl.'s Mot. at 17-18. Gang and cartel members, like all criminals, have some privacy interests in their federal "rap sheets." *See Reps. Comm.*, 489 U.S. at 753, 771. Criminal organization affiliations can be used by a bad actor along with the other demographic information already disclosed by ICE (immigration status, immigration history, DACA information, citizenship, ethnicity, criminal history, involvement in active law enforcement action, etc.) to identify specific noncitizens. *See Vaughn* Index at 109, 111. Notably, Plaintiff makes no argument that terrorist members lack a privacy interest in that designation by law enforcement. *See Brennan Ctr.*, 2021 WL 2711765, at *3-4 (those convicted of terrorism-related offenses retain some privacy interests in those convictions). The public, or noncitizens themselves, could use this affiliation information, along with all the other information that ICE released (such as the area of the enforcement action, country of birth, country of origin, entry data, and immigration history, a month and year of birth could allow certain individuals to be identified) to identify the subjects named.

2. With respect to the public interest, Plaintiff fails to meet its burden to show there is a public interest in disclosing the names of criminal organization affiliation that outweighs individuals' privacy interests. Plaintiff points to the public's interest in knowing whether gang or cartel members are in the country, Pl.'s Mot. at 17, but Defendants already "shed[] light on ICE's

---

[10] Defendants also withheld this information under Exemption 7(E).

performance of its statutory duties," Pineiro Decl. ¶¶ 91, 109, by disclosing that certain noncitizens have a gang, cartel, or terrorist group affiliation. The public, thus, knows how ICE is enforcing the law against members of those dangerous groups; Plaintiff has not established that there is a further marginal public interest in naming specific groups, the only information that has been withheld and makes no attempt to do so. Because Plaintiff has not met its burden the Court should affirm that ICE properly redacted this information pursuant to Exemptions 6 and 7(C).

### E.   Residential Addresses[11]

Defendants properly withheld residential address information under Exemptions 6 and 7(C), because they do not further the public's understanding of ICE operations and they intrude on personal privacy interests. Defs.' Mot. at 22-23. While Plaintiff narrowed its challenge to the city and state information, Defendants still meet their burden to establish a privacy interest in that information considering the breadth of the information that has been released, as well as the additional personal information about noncitizens that Plaintiff still seeks. *See id.*

Given that noncitizens and other third parties have a privacy interest in residential address information, including the city and state, the Court should next look at the public interest asserted by Plaintiff, that being that "[t]he public has a[] [privacy] interest in knowing the locations from which aliens subject to removal came." Pl.'s Mot. at 26. ICE has already provided the country of original for each noncitizen in the Spreadsheet Report: each row of the Spreadsheet Report provides the country of citizenship.[12] Pineiro Decl. ¶¶ 5-6. Additionally, for many of the noncitizens, ICE released information about the countries to which noncitizens have and will be

---

[11] ICE also withheld this information pursuant to Exemption 7(E).

[12] For this reason, ICE has already provided the information Plaintiff requests for country information. *See* Pl.'s Mot. at 25.  The addresses at issue are residential addresses associated with at large enforcement operations against noncitizens located in the country. *See* Pineiro Decl. ¶¶ 16, 25, 33.

removed. *See, e.g.*, *Vaughn* Index at 131, 194, 198. Thus, ICE has already released the information that Plaintiff argues is in the public interest.  Balancing the privacy interests in residential address information against the public interest, or lack thereof, weighs in favor of protecting personal privacy.  ICE appropriately withheld residential address information under Exemptions 6 and 7(C).

## IV.    DEFENDANTS PROPERLY APPLIED EXEMPTION B(7)(E)

ICE properly withheld certain, limited information under Exemption 7(E), which protects sensitive information pertaining to law enforcement techniques, procedures, and guidelines. 5 U.S.C. § 552(b)(7)(E). As an initial matter, explained above, *supra* II, the Spreadsheet Report was compiled for law enforcement purposes.

### A.  Specific Apprehension Locations

Defendants properly withheld specific apprehension location information under Exemption 7(E), because release would disclose techniques, procedures, or guidelines for law enforcement investigations, which could reasonably be expected to risk circumvention of the law. Defs.' Mot. at 27-28.

1. Plaintiff overstates Defendants' burden for withholding law enforcement sensitive information. Pl.'s Mot. at 26. Defendants need only establish that "the release of [the requested] information *might* create a *risk* of circumvention of the law."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (emphasis added and citation omitted). As to specific apprehension locations for noncitizens, disclosure risks circumvention of the law because bad actors could learn "of border security vulnerabilities [and] where DHS is focusing its attention." *Vaughn* Index at 248. This Court acknowledged as much in *American Immigration Council v. United States Immigration and Customs Enforcement*. 464 F. Supp. 3d 228, 244-45 (D.D.C. 2020) (disclosure of "data detailing where individuals were apprehended or encountered" could be used to

20

circumvent the law). Yes, the dataset of apprehension locations was larger in *AIC*, Pl.'s Mot. at 28, but the Spreadsheet Report contains enough specific apprehension locations that bad actors could use them to "target or avoid certain places to illegally enter the United States." *See* Pineiro Decl. ¶ 117. That risk of circumvention of border security laws justifies withholding the specific apprehension location information.

2. Defendants have explained that specific apprehension locations are part of its law enforcement techniques, procedures, or guidelines. *Contra* Pl.'s Mot. at 27. The information is detailed, including "mile markers, roadway addresses and locations, specific lanes of entry at points of entry" "as well as the indications utilized by border patrol that focused their attention on the particular non-citizens." Pineiro Decl. ¶ 115. DHS has "guidelines pertaining to the apprehension of non-citizens entering the U.S., which are not known to the public." *Vaughn* Index at 247; *see* Pineiro Decl. ¶ 115. Releasing information about specific apprehension locations "could reasonably be expected to risk circumvention of the law" and reduce the effectiveness of DHS's border security operations. *See* Pineiro Decl. ¶ 115; *Vazquez v. U.S. Dep't of Just.*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (law enforcement techniques and procedures are exempt under 7(E) if divulgence "could reduce or nullify their effectiveness") (citation omitted), *aff'd*, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013). Because Defendants have identified "what procedures are at stake," *CREW*, 746 F.3d at 1102, the redactions for specific apprehension locations clear the "low bar" for withholding under Exemption 7(E), *see Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

**B. Addresses and Attempts to Locate Noncitizens**

Defendants properly withheld information about addresses and attempts to locate noncitizens under Exemption 7(E), because release would disclose techniques and procedures for

law enforcement investigations and would disclose guidelines for law enforcement investigations, which could reasonably be expected to risk circumvention of the law. Defs.' Mot. at 29.

1. Plaintiff only contests Defendants' withholding of apprehension location information and does not discuss Defendants' withholding of address information relating to attempts to locate at large noncitizens, including addresses under Exemption 7(E). *Compare* Defs.' Mot. at 29 (defending withholdings of "[t]he collection of addresses and records of attempts to locate noncitizens") (citing Pineiro Decl. ¶¶ 107-11), *with* Pl.'s Mot. at 26-27 (citing only Pineiro Decl. ¶¶ 114-19). Plaintiff has forfeited any challenge to these withholdings.

2. Defendants met their burden to establish a privacy interest in residential addresses and other addresses associated with where noncitizens were located. Defs.' Mot. at 29.

3. In case there is any doubt, the collection of addresses and records of attempts to locate noncitizens detail law enforcement techniques and procedures. Specifically, the Spreadsheet report details ICE's "enforcement steps in locating the non-citizens at issue, including how many officers will be utilized, when and how the location will be targeted and how the enforcement action will take place" and "specific locations that ICE is aware of where at large non-citizens may be located." Pineiro Decl. ¶ 107; *Vaughn* Index at 227. Disclosing that information could help bad actors "remain[] at large and avoid[] ICE detection" in the future. Pineiro Decl. ¶ 110. No more is required to clear the "low bar" for withholding under Exemption 7(E).

**C. Gang, Cartel, Terrorist Group Affiliation, and Monikers**

Defendants properly withheld gang, cartel, and terrorist group affiliation and moniker information under Exemption 7(E), because release would disclose techniques and procedures for law enforcement investigations and would disclose guidelines for law enforcement investigations, which could reasonably be expected to risk circumvention of the law. Defs.' Mot. at 30-31.

Plaintiff does not contest that "[k]nowing what information is collected, how it is collected, and more importantly, when it is not collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection." *See id.* at 31 (quoting *Soghoian v. U.S. Dep't of Just.*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012)).

Plaintiff's sole challenge to Defendants' withholding gang, cartel, and terrorist affiliation under Exemption 7(E) is that ICE has failed to connect this information to a law enforcement technique or procedure. Pl.'s Mot. at 29-30.[13] But the Pineiro Declaration explains that most rows (13 out of 16, in the sample) containing information about these affiliations "were generated based upon law enforcement intelligence and evaluations." Pineiro Decl. ¶ 131. ICE has also shown that sometimes non-DHS law enforcement partners shared the affiliations, *id.* ¶ 130, so disclosing the information could reveal the procedure for, and extent of, intelligence sharing. Finally, the significant amount of personal identifying information in the Spreadsheet Report increases the stakes of keeping this information confidential, because if Plaintiff prevails on its challenge to ICE's withholding of names or criminal docket numbers the law enforcement generated and documented information would be easily linked to specific noncitizens. *Id.* ¶ 132 & n.34. This link between specific law enforcement intelligence and a particular noncitizen would alert that noncitizen, as well as other bad actors, to the intelligence that has been gathered on them. *See id.*

## V.  FORESEEABLE HARM WOULD RESULT FROM THE RELEASE OF THE EXEMPT INFORMATION

Though for some withholdings in the Spreadsheet Report, Plaintiff contests that Defendants have properly balanced harm from invasions of personal privacy against the public interest, and the need to withhold sensitive information pertaining to law enforcement procedures,

---

[13] Plaintiff makes no substantive argument in opposite to ICE's withholdings of moniker information pursuant to Exemption 7(E)

Plaintiff does not separately dispute that Defendants satisfy the foreseeable harm prong of the withholding analysis. *See* Defs.' Mot. at 32-33.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment, ECF No. 26, and deny Plaintiff's motion for summary judgment, ECF No. 28.


Dated: October 27, 2023                          Respectfully submitted,

                                                 BRIAN M. BOYNTON
                                                 Principal Deputy Assistant Attorney General

                                                 ELIZABETH J. SHAPIRO
                                                 Deputy Branch Director

                                                 */s/ Brian Rosen-Shaud*
                                                 BRIAN C. ROSEN-SHAUD
                                                 Trial Attorney (Me. Bar No. 006018)
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L St NW
                                                 Washington, D.C. 20005
                                                 Telephone: (202) 305-7667
                                                 Email: Brian.C.Rosen-Shaud@usdoj.gov

                                                 *Counsel for Defendants*