# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendants*.

Case No.: 21-cv-02168-RDM

## PLAINTIFF'S REPLY IN SUPPORT OF
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    FOIA's Privacy Protections Do Not Provide the Same Privacy Rights for Noncitizens as for Citizens. .................................................................................................................. 2

II.   ICE Cannot Rely on Exemption 7 Because the Records were not Created for Law Enforcement Purposes. ................................................................................................... 5

III.  ICE Fails to Carry Its Burden of Demonstrating the Presence of Sufficient Privacy Interests Under Exemption 7(C) .................................................................................... 8

      A.    ICE fails to demonstrate that it lawfully withheld information about gang, cartel, or terrorist group affiliation. ..................................................................... 9

      B.    ICE fails to demonstrate that it lawfully withheld court case numbers .................. 10

      C.    ICE fails to demonstrate that it lawfully withheld the names and monikers of aliens identified in the records. ................................................................... 13

      D.    ICE fails to demonstrate that it lawfully withheld dates of birth. ........................... 17

      E.    ICE fails to demonstrate that it lawfully withheld full addresses .......................... 18

IV.  ICE Fails to Carry its Burden of Demonstrating that its Exemption 7(E) Withholdings Protect Law Enforcement Techniques and Procedures. ........................... 19

      A.    ICE fails to demonstrate that the withheld apprehension location and address information constitutes a law enforcement technique or procedure ........................ 19

      B.    ICE also fails to demonstrate that the withheld gang, cartel, and terrorist affiliation information constitutes a law enforcement technique or procedure ........ 21

CONCLUSION ............................................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*ACLU v. U.S. Dep't of Just.*,
 655 F.3d 1 (D.C. Cir. 2011) ................................................................................. 9

*ACLU v. U.S. Dep't of Just.*,
 750 F.3d 927 (D.C. Cir. 2014) ....................................................................... 11, 12

*Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*,
 464 F. Supp. 3d 228 (D.D.C. 2020) .................................................................. 17

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*,
 950 F. Supp. 2d 221 (D.D.C. 2013) .................................................................... 7

*Bartko v. U.S. Dep't of Just.*,
 898 F.3d 51 (D.C. Cir. 2018) .............................................................................. 8

*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
 475 F.3d 381 (D.C. Cir. 2007) .......................................................................... 18

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*,
 No. 18-cv-1860-RDM, 2021 WL 2711765 (D.D.C. July 1, 2021) .......................... 9, 11, 12, 13

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*,
 No. 18-cv-1860-RDM, 2020 WL 1189091 (D.D.C. Mar. 12, 2020) ....................... 8

*Campbell v. U.S. Dep't of Just.*,
 164 F.3d 20 (D.C. Cir. 1998) .............................................................................. 5

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
 746 F.3d. 1082 (D.C. Cir. Apr. 1, 2014) ............................................... 13, 16, 20, 22

*Davis v. U.S. Dep't of Just.*,
 968 F.2d 1276 (D.C. Cir. 1992) ........................................................................ 15

*Demore v. Kim*,
 538 U.S. 510 (2003) ............................................................................................ 4

*Dep't of Air Force v. Rose*,
 425 U.S. 352 (1976) ............................................................................................ 3

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
 489 U.S. 749 (1989) ............................................................................................ 2

*FBI v. Abramson*,
 456 U.S. 615 (1982) ............................................................................................ 3

*Graff v. FBI*,
 822 F. Supp. 2d 23 (D.D.C. 2011) ...................................................................... 4

*Judicial Watch, Inc. v. U.S. Dep't of State*,
 282 F. Supp. 3d 36 (D.D.C. 2017) .................................................................... 18

*Maydak v. Dep't of Just.*,
    254 F. Supp. 2d 23 (D.D.C. 2003) ............................................................................... 6

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ............................................................................... 20

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ...................................................................................... 1, 4, 10

*N.Y. Times Co. v. U.S. Dep't of Homeland Sec.*,
    959 F. Supp. 2d 449, 450 (S.D.N.Y. 2013) .............................................................. 14

*Nation Mag. v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ..................................................................................... 2

*New Orleans Workers' Ctr. for Racial Just. v. ICE*,
    373 F. Supp. 3d 16 (D.D.C. 2019) ............................................................................. 7

*Pinson v. Dep't of Just.*,
    236 F. Supp. 3d 338 (D.D.C. 2017) ........................................................................... 6

*Roseberry-Andrews v. Dep't of Homeland Sec.*,
    299 F. Supp. 3d 9 (D.D.C. 2018) ............................................................................... 7

*Rosenfeld v. FBI*,
    No. 07-cv-3240-MHP, 2011 WL 13269173 (N.D. Cal. Feb. 23, 2011) ..................... 7

*SAI v. Transp. Sec. Admin.*,
    315 F. Supp. 3d 218 (D.D.C. 2018) ....................................................................... 9, 20

*Schoenman v. FBI*,
    604 F. Supp. 2d 174 (D.D.C. 2009) ........................................................................... 6

*Tuffly v. Dep't of Homeland Security*,
    870 F.3d 1086 (9th Cir. 2017) ............................................................................. 4, 15

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991) ................................................................................................... 4

*U.S. Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ................................................................................................... 4

*Union Leader Corp. v. U.S. Dep't of Homeland Security*,
    749 F.3d 45 (1st Cir. 2014) ................................................................................. 13, 14

*Vymetalik v. FBI*,
    785 F.2d 1090 (D.C. Cir. 1986) ............................................................................. 5, 6

*Whittaker v. U.S. Dep't of Just.*,
    No. 18-cv-1434-APM, 2019 WL 2569915 (D.D.C. June 21, 2019) ..................... 19, 21

**Statutes**

5 U.S.C. § 552 ................................................................................................... *passim*

## INTRODUCTION

Upon entering office in January 2021, the Biden Administration issued multiple memoranda effecting significant political changes in immigration policy. Among other things, a political review process was instituted at Immigration and Customs Enforcement ("ICE"), whereby ICE's political leadership demanded that their approval be sought before ICE agents undertook various enforcement actions. Specifically, before arresting or removing an alien, ICE agents were required to stop and seek approval from Washington, D.C. headquarters.

Understanding the serious ramifications of such a policy, Plaintiff America First Legal Foundation submitted a Freedom of Information Act ("FOIA") request on May 18, 2021, seeking records demonstrating the depth of this policy's impact on ICE's important enforcement work. Through this request, Plaintiff sought to ensure that the public had the information necessary to check agency action and "to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Unfortunately, it took this lawsuit for ICE to begin responding to Plaintiff's request. But even then, ICE withheld numerous pieces of information that fall outside the scope of any FOIA exemption.

First, ICE withheld portions of the responsive record—a cumulative spreadsheet detailing instances where political approval was required for enforcement actions—pursuant to FOIA's privacy exemptions. However, considering that the withheld information relates solely to noncitizens, FOIA's privacy protections do not apply. Second, even if noncitizens had cognizable privacy interests, ICE fails to carry its burden of showing that any such privacy interests are implicated here. And, even if ICE had carried that burden and showed cognizable privacy interests, the public interest in knowing how public health and safety are impacted by these policies would far outweigh any privacy interests. However, ICE wholly ignores the substantial public interest in knowing how the Federal Government is addressing the types of threats that are present in

communities around the country from noncitizens who have a demonstrated history of criminal conduct, and how public health and safety are affected by the requirement that ICE officers receive political approval before taking enforcement action.  Third, ICE's attempt to withhold information to protect law enforcement techniques and procedures fails for the simple reason that ICE does not identify any such technique or procedure that would be implicated by disclosure.

Because ICE's withholdings find no support under FOIA, the Court should deny ICE's motion for partial summary judgment and grant Plaintiff's cross-motion for partial summary judgment.

## ARGUMENT

### I.    FOIA's Privacy Protections Do Not Provide the Same Privacy Rights for Noncitizens as for Citizens.

As Plaintiff demonstrated in its cross-motion, FOIA Exemptions 6 and 7(C) are unavailable to ICE in this case because these privacy protections plainly apply only to a "citizen" identified in the records.  *See* Pl.'s Mot. for Summ. J. 5–7 (ECF No. 28-1) ("Pl.'s Mot."); *see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 780 (1989) ("Accordingly, we hold as a categorical matter that a third party's request for law enforcement records or information about a private *citizen* can reasonably be expected to invade that *citizen*'s privacy[.]") (emphasis added); *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (explaining that there is "a long line of FOIA cases holding that disclosure of the *identities* of private *citizens* mentioned in law enforcement files constitutes an unwarranted invasion of privacy and is thus exempt under 7(C).") (first emphasis in original, second emphasis added).  ICE's arguments to the contrary are unpersuasive.  *See* Defs.' Reply 2–4 (ECF No. 32).

For instance, ICE first responds by arguing (at 2–3) that the plain text of Exemptions 6 and 7(C) extend to noncitizens because they encompass "personal privacy interests."  Thus, according

to ICE, this phrase—which is silent as to *whose* personal privacy interests are protected—should be construed to extend protections to noncitizens. Of course, that is precisely the opposite of how the Supreme Court directs courts to interpret FOIA's exemptions, which are to "be narrowly construed … in favor of disclosure." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). Thus, statutory silence should be interpreted in favor of disclosure, not secrecy. *See* 5 U.S.C. § 552(b)(6); *id.* § 552(b)(7)(C) (only stating that "personal privacy" is protected). Indeed, when faced with two plausible readings of a FOIA exemption, the Supreme Court instructs that "FOIA requires us to choose that interpretation most favoring disclosure." *Dep't of Air Force v. Rose*, 425 U.S. 352, 366 (1976). Thus, the Court should reject ICE's invitation to read these exemptions broadly to protect the privacy interests of noncitizens because doing so would undermine the fundamental policy of FOIA—"to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 361 (citation and quotation marks omitted).

ICE also has no response to Plaintiff's showing that (Pl.'s Mot. 5–7) that Exemptions 6 and 7(C) do not extend to noncitizens because noncitizens are not beneficiaries of FOIA. Similarly, ICE fails to rebut the fact that a narrow reading of Exemptions 6 and 7(C) is consistent with the broader architecture of U.S. law.[1] Instead, ICE focuses on instances where courts appear to have recognized a privacy interest of noncitizens under FOIA. But Plaintiff has already acknowledged as much. *See* Pl.'s Mot. 7. However, ICE ignores the fact that the Supreme Court, in the cases ICE cites, was not squarely presented with the question of whether FOIA's privacy protections extended to noncitizens. Rather, the Supreme Court simply assumed such protections when

---

[1] In a footnote, ICE asserts that these arguments are irrelevant because the privacy rights protected in FOIA go further than the common law and the Constitution. Defs.' Reply 4 n.2. While that may be true, it does not say anything about *who* enjoys those protections and whether such protections should be construed in common with other provisions of American law that differentiate between citizens and noncitizens.

resolving different questions.  *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991).  As such, these cases do not stand for the proposition that the Supreme Court has confirmed the expansion of FOIA's privacy interests to noncitizens.

Moreover, the remaining cases ICE cites are equally unavailing.  For instance, ICE relies on *Tuffly v. Dep't of Homeland Security*, 870 F.3d 1086 (9th Cir. 2017), which is not binding on this Court.  But even if it were, *Tuffly* addressed very different facts, and the *Tuffly* court was not expressly asked to resolve whether FOIA's privacy protections extend to noncitizens.

Similarly, ICE's reliance on *Graff v. FBI*, 822 F. Supp. 2d 23 (D.D.C. 2011), is equally unavailing.  To be sure, the court in *Graff* did squarely reject an argument that "foreign nationals have a weaker privacy interest than U.S. citizens," but the plaintiff in that case "concede[d]—that foreign nationals are entitled to the privacy protections embodied in FOIA."  *Graff*, 822 F. Supp. 2d at 34.  Thus, the *Graff* court also was not required to resolve the threshold question of whether FOIA's privacy protections extend to noncitizens.

Indeed, the *Graff* court did not address whether the obligation to narrowly construe FOIA's exemptions requires a narrow interpretation of these exemptions' reach.  *See Abramson*, 456 U.S. at 630.  Nor did *Graff* address whether courts are required to choose the interpretation of a FOIA exemption that "most favor[s] disclosure."  *Rose*, 425 U.S. at 366.  And *Graff* did not address the scope of FOIA's intended beneficiaries, *see Robbins Tire*, 437 U.S. at 242, or the fact that noncitizens frequently receive lesser protections in other areas of U.S. law, *Demore v. Kim*, 538 U.S. 510, 521 (2003).  For all these reasons, *Graff* does not answer the question presented regarding the reach of Exemptions 6 and 7(C).  And, to the extent those courts concluded that

FOIA's privacy protections extend to noncitizens, Plaintiff respectfully submits that the decisions cannot be reconciled with FOIA's text or with the authority discussed above.[2]

Accordingly, the Court should deny ICE's motion with respect to all Exemption 6 and 7(C) withholdings.

## II.   ICE Cannot Rely on Exemption 7 Because the Records were not Created for Law Enforcement Purposes.

Even if the Court concludes that FOIA's privacy protections extend to noncitizens, the Court should nonetheless enter summary judgment in Plaintiff's favor with respect to ICE's Exemption 7 withholdings.  Indeed, ICE has not carried its threshold burden of showing that the requested records were compiled for law enforcement purposes.  *See* 5 U.S.C. § 552(b)(7).  That is fatal to each of ICE's Exemption 7 withholdings.  *See Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 33 (D.C. Cir. 1998), *as amended* (1999) ("Rather, to justify summary judgment under exemption 7, the FBI must explain why each withheld document or set of closely similar documents relate to a particular law enforcement purpose.").  In fact, ICE continues to rely on the same conclusory statements about law enforcement purpose that other courts have rejected.  *See Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986) ("FBI records are not law enforcement records simply by virtue of the function that the FBI serves") (citation omitted).

Indeed, despite ICE's best efforts at misdirection, there is no dispute that ICE devoted just a *single sentence* to satisfying this burden in the Pineiro Declaration, baldly stating that "[t]he law enforcement records at issue pertain to investigations and enforcement activities conducted pursuant to ICE's law enforcement authorities."  Decl. of Fernando Pineiro ¶ 62 ("Pineiro Decl.")

---

[2] At the very least, even if the Court were inclined to conclude that these decisions favor extending FOIA's privacy protections to noncitizens, those protections do not apply to noncitizens in the same way that they apply to citizens.

(ECF No. 26-2).  ICE's attempt (at 4–8) to bootstrap the Pineiro Declaration's statements into more than just conclusory assertions is unavailing.

For instance, ICE points (at 4–5) to statements from the Pineiro Declaration that merely describe the information contained in the released spreadsheet, such as "information on each non-citizen subject to removal" and "next enforcement and removal steps."  Pineiro Decl.  ¶¶ 14, 15. But this is just a description of information in the spreadsheet, and it assumes that the records were compiled for law enforcement purposes because the agency performs some law enforcement functions.  That will not do.  *See, e.g., Vymetalik*, 785 F.2d at 1095 ("FBI records are not law enforcement records simply by virtue of the function that the FBI serves") (citation omitted); *Schoenman v. FBI*, 604 F. Supp. 2d 174, 203 (D.D.C. 2009) ("advis[ing]" the FBI to provide "a more detailed explanation in line with D.C. Circuit case law" on "this threshold question"); *Maydak v. Dep't of Just.*, 254 F. Supp. 2d 23, 38 (D.D.C. 2003) (holding that "BOP's failure to satisfy the threshold law enforcement requirement defeats its motion for summary judgment under exemption 7").  Although, "[a]gencies classified as law enforcement agencies receive a special deference in their claims of law enforcement purpose," *Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 364 (D.D.C. 2017) (citation omitted), ICE's position would make "[t]his review … vacuous." *Id.* (quotation marks and citation omitted).

ICE also seeks to avoid this conclusion by arguing (at 5–6) that the spreadsheets were created under policies requiring them to seek authorization to initiate enforcement and removal of certain noncitizens, such that they once had a law enforcement purpose even if they no longer serve one now.  But ICE cannot conflate administrative documentation requirements with the

enforcement actions themselves.[3]  Talking about a law enforcement activity is not the same thing

as engaging in a law enforcement activity.  And ICE's political leadership cannot, on the one hand,

stymie the law enforcement activity of the agency and then claim the extra paperwork is exempt

because it is law enforcement activity.  *See, e.g.*, *Rosenfeld v. FBI*, No. 07-cv-3240-MHP, 2011

WL 13269173, at *4 (N.D. Cal. Feb. 23, 2011) (explaining that political purposes are distinct from

law enforcement purposes under Exemption 7).

　　In fact, ICE's circular and conclusory assertions repeat the error condemned in *American

Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221 (D.D.C. 2013) ("*AIC*"),

where the court rejected the argument that "this Court can take it for granted that all of ICE's

withholdings under Exemption 7(E) automatically satisfy the 'law enforcement purposes'

requirement." *Id.* at 246.  Yet that is exactly what ICE proposes here.  In response, ICE

unconvincingly attempts to distinguish this case from *AIC* with the conclusory assertion that "the

Pineiro [D]eclaration explains that all entries in the Spreadsheet Report were compiled for law

enforcement purposes."  Defs.' Reply 6.  But that is exactly the type of conclusory statement that

will not suffice.  *See Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 n.10

(D.D.C. 2018) (rejecting ICE's "blanket assertion" that "any records created by a program office

that provides support to ICE meet the Exemption 7 threshold"); *New Orleans Workers' Ctr. for

Racial Just. v. ICE*, 373 F. Supp. 3d 16, 56 (D.D.C. 2019) (noting that ICE's *Vaughn* index

---

[3] Moreover, ICE's assertion (at 5) that these reports were important for designing long-term immigration enforcement priorities is not supported by the Pineiro declaration.  Rather, ICE cited to paragraph 14 of the Pineiro Declaration, but that paragraph only contains a description of the information in the spreadsheet report, without any connection to policy planning.  Such unsupported *post-hoc* rationalization should be cast aside.

"make[s] no attempt to address the specific law enforcement purpose of the withheld documents"), *vacated pursuant to Stip.*, No. 15-cv-431-RBW, 2019 WL 4852743 (D.D.C. July 11, 2019).[4]

Because ICE has provided nothing beyond conclusory statements about a law enforcement purpose, ICE fails to satisfy Exemption 7's threshold requirement, and the Court should enter summary judgment in Plaintiff's favor with respect to all challenged Exemption 7 withholdings.

## III.  ICE Fails to Carry Its Burden of Demonstrating the Presence of Sufficient Privacy Interests Under Exemption 7(C).

Even if the Court were to conclude that FOIA's privacy protections extend to non-citizens, and that ICE satisfied Exemption 7's threshold requirement, ICE has still failed to carry its burden of demonstrating that various Exemption 7(C) withholdings were proper, and the Court should deny ICE's motion with respect to those withholdings.[5]

Under Exemption 7(C), ICE may only withhold requested information if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  And, even where the disclosure may constitute an invasion of personal privacy, the "privacy interest the government asserts" must "outweigh[] any public interest in disclosure." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 64 (D.C. Cir. 2018).  ICE fails to carry its burden under Exemption 7(C) for several categories of withholdings.

---

[4] Similarly, ICE's invocation of *Brennan Ctr. for Just. at New York University School of Law v. United States Dep't of Justice*, No. 18-cv-1860-RDM, 2020 WL 1189091 (D.D.C. Mar. 12, 2020), is unavailing.  *Brennan Center.* upheld an exemption for a database that was used for the investigation and prosecution of future cases and was not an administrative catalogue. *Id.* at *4.

[5] ICE incorrectly claims that Plaintiff waived its argument that ICE's withholdings are unlawful under Exemption 6, misreading Plaintiff's prior footnote as a concession to the validity of its Exemption 6 argument.  *See* Defs.' Reply 8 n.4.  This is squarely contradicted by Plaintiff's cross-motion which explicitly stated that: "In its motion, ICE focuses on Exemption 7(C), rather than Exemption 6. However, *the shortcomings* of ICE's arguments under Exemption 7(C) *are equally applicable* to its attempt to withhold this information under Exemption 6."  Pl.'s Cross-Mot. 11 n.3 (emphasis added).

**A.      ICE fails to demonstrate that it lawfully withheld information about gang, cartel, or terrorist group affiliation.**

ICE fails to carry its burden of demonstrating that it properly withheld information about gang, cartel, or terrorist group affiliations.  Pineiro Decl. ¶¶ 87–88.  Indeed, ICE fails to identify a sufficient privacy interest implicated by this information, instead citing inapposite cases holding that criminals maintain some privacy interest in their past convictions.  *See* Defs.' Reply 18 (citing *Reps. Comm.*, 489 U.S. at 753, 771 (recognizing some interest in "rap sheets"); *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*, No. 18-cv-1860-RDM, 2021 WL 2711765, at *3–4 (D.D.C. July 1, 2021) ("*Brennan Center III*") (recognizing a *de minimis* privacy interest in terrorism convictions)).  But gang membership is not equivalent to a conviction, and these cases are thus irrelevant here.  Perhaps that is why ICE fails to identify any actual privacy interest in such affiliations, speculating only that this information "can be used by a bad actor along with the other demographic information already disclosed by ICE … to identify specific noncitizens." Defs.' Reply 18.

Of course, such conclusory speculation—unsupported by the record—is not enough to support an assertion of a privacy interest under Exemption 7(C).  ICE has thus failed to meet its burden of demonstrating that a privacy interest would be implicated by releasing the portions of the spreadsheet with these affiliations.  *See SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 233 (D.D.C. 2018) (quotation marks and citation omitted) (noting that an agency's declarations must be "relatively detailed and non-conclusory" to carry the agency's burden).  And, without any privacy interest, the Court need not turn to the public interest requirement.  *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 16 (D.C. Cir. 2011) ("[I]f there is no privacy interest, Exemption 7(C) simply does not apply.").

However, ICE also acknowledges (at 19) that there is a public interest in knowing whether gang or cartel members are in the county.  But ICE nonetheless claims that by disclosing generic affiliations, the public already "knows how ICE is enforcing the law against members of those dangerous groups."  Defs.' Reply 19.  But without knowing *which* gangs, cartels, or terrorist organizations are actually implicated in these enforcement actions, the public has no way of understanding the level to which members of foreign gangs or other criminal enterprises are in the United States illegally and subject to enforcement actions.  And there can be no serious dispute that the public has an interest in the specific public safety risks posed by such individuals and whether ICE's bureaucratic red tape increased those risks.  *See* Pl.'s Decl. ¶¶ 7–9.  This information is thus necessary "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Robbins Tire*, 437 U.S. at 242.

Accordingly, the Court should order ICE to release the withheld gang, cartel, and terrorist group affiliations.

**B.      ICE fails to demonstrate that it lawfully withheld court case numbers.**

Additionally, several decisions of this Court confirm that ICE cannot withhold court case numbers from the narrative portions of the spreadsheets.  *See* Pl.'s Mot. 13. Indeed, the privacy interest in those numbers is low, and the public interest is high.

1. As to privacy, ICE does not contest that the docket numbers are already in the public domain, thereby significantly reducing any privacy interest.  Defs.' Reply 15.  Thus, any privacy interest is already diminished by the public availability of the information ICE withheld.  Yet ICE distorts this Court's analysis in the *Brennan Center* litigation to argue for a *blanket* withholding of case numbers "where noncitizens were not convicted of a crime, *and* for convictions that do not

clearly have a connection to a defendant's unlawful immigration status."[6]  *Id.*  In short, ICE argues that, just as this Court allowed DOJ to withhold case numbers for convictions unrelated to terrorism, so too should this Court allow ICE to withhold convictions unrelated to immigration status.  *Id.* at 16.

But this argument falsely equates the serious "stigmatic" harm of association with terrorism charges in the *Brennan Center* litigation—where release of a docket number directly implicated the individual in a terrorism investigation—with the ancillary request for docket numbers in this case.[7]  *Brennan Ctr III.*, 2021 WL 2711765, at *4; *see also ACLU v. U.S. Dep't of Just.*, 750 F.3d 927, 932–33 (D.C. Cir. 2014) ("*ACLU II*") (expressing concern over revealing that an individual was the subject of wireless tapping).  The case numbers in the *Brennan Center* litigation were potentially stigmatic because they swept in people who were never actually charged with a terrorism related crime.  2021 WL 2711765, at *4.  Here, by contrast, each case number pertains to someone who was subject to enforcement proceedings as a noncitizen, otherwise authorization would have not been sought and granted for removal.  Thus, there is no danger of a *false association* with a stigmatic claim, as was at issue in the *Brennan Center* litigation.  Indeed, the release of a case number in these instances does not pose the same stigmatic concerns because it does not convey information beyond the conviction for particular crimes—which this Court

---

[6] ICE thus concedes that docket numbers that reveal a conviction related to an alien's unlawful immigration status should be released.

[7] ICE concedes that the case numbers are ancillary (Defs.' Reply 15 n.9) but claims that this undercuts the public interest in the request.  Ancillary in this case does not mean the request is unimportant; instead, it differentiates this case from the *Brennan Center* litigation where the case numbers directly linked the individuals in question to the specific government action of a terrorism investigation.  The numbers in this case lack such a direct connection and as such are ancillary.

recognizes as only a *de minimis* privacy interest.[8] *Id.* (holding that there is barely more than a *de minimis* privacy interest in release of conviction for terrorism related charges).

As for individuals whose cases resulted in acquittals or dismissals, those individuals "have a much stronger privacy interest in controlling information concerning those prosecutions," but here the focus is on how the government applied its policy. *Brennan Ctr. III*, 2021 WL 2711765, at *4 (quoting *ACLU II*, 750 F.3d at 933). As such, there is no basis to conclude that releasing docket numbers (of which acquittals will only be a portion) will expose individuals to any measurable public attention. Accordingly, any privacy interest here is low.

2. As to the public interest, it clearly outweighs any privacy interests. Indeed, ICE significantly misconstrues the public interest Plaintiff identified in support of releasing this information. *See* Defs.' Reply 14 (claiming that "the prime purpose of seeking docket numbers is to use them to identify noncitizens"). But Plaintiff's cross-motion explicitly stated that the release of dockets "will allow the public to learn more about the criminal history of those aliens who ICE officers were unable to remove without first obtaining political approval. In particular, this information will allow the public to determine if these aliens present serious public safety risks based on their previous criminal activity." Pl.'s Mot. 11–12. And such information, as the First Circuit recognized in *Union Leader Corp. v. U.S. Dep't of Homeland Security,* would "enable the [requester] to investigate public records pertaining to the arrestees' prior convictions and arrests, potentially bringing to light" information on ICE's performance of its duties. 749 F.3d 45, 56 (1st

---

[8] And the Vaughn Index includes many such court case numbers. *See, e.g.*, Vaughn Index, June 2022 Production, Row 41 (ECF No. 26-3 at 13–15) (domestic-violence conviction); *id.*, June 2022 Production, Row 525 (ECF No. 26-3 at 18–19) (conviction for sexual assault of female child age 6); *id.*, Dec. 2022 Production, Row 883 (ECF No. 26-3 at 44–46) (drug-trafficking conviction); *id.*, Nov. 2022 Production, Row 921 (ECF No. 26-3 at 83–84)(guilty plea for "pre-planned execution-style murder").

Cir. 2014) (citing *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d. 1082, 1093 (D.C. Cir. Apr. 1, 2014) ("*CREW*")).

ICE also seeks to avoid (at 15) this Court's holding in *Brennan Center III*, that case numbers are relevant to "an array of issues of public attention[.]" 2021 WL 2711765, at *4. The agency posits that the public has no need to examine the criminal dockets because the spreadsheet has significant details "such that revealing docket numbers provides no marginal public benefit." Defs.' Reply 15. But just as the discrepancies between terrorism charges and what the DOJ described as terrorism cases in *Brennan Center III* assisted the public in "[u]nderstanding what the Department means when it describes its efforts to fight" crime, so too would discrepancies between convictions—including those reported in the spreadsheets—and relevant uncharged conduct assist the public in evaluating ICE's efforts to enforce immigration laws. *Brennan Ctr. III*, 2021 WL 2711765, at *2. *Brennan Center III* is thus on all fours with this case. And, because ICE agrees with Plaintiff that this Court's decisions in the *Brennan Center* litigation are controlling, that should be the end of the matter. *See* Defs.' Reply 15 ("Defendants' position follows from *Brennan Center*[.]").

Accordingly, the Court should order ICE to release all court case numbers because any privacy interests are low and substantially outweighed by the public interest.

C. **ICE fails to demonstrate that it lawfully withheld the names and monikers of aliens identified in the records.**

ICE continues to significantly overstate the privacy interests at play to justify withholding names and monikers of noncitizens in the spreadsheet and narrative accounts. According to ICE, individuals "named in civil investigations, like the enforcement actions proposed in the Spreadsheet Report, have strong privacy interests." Defs.' Reply 9. But ICE concedes that the

records here largely identify aliens for whom removal has been approved,[9] and that these records discuss public aspects of their background (*e.g.*, previous convictions, gang affiliation, etc.).  *Id.* at 10 ("ICE has already released significant amounts of personal information for those noncitizens that implicates their privacy interests[.]").  In such circumstances, the noncitizens' privacy interest in their names "is attenuated both by the status of their underlying convictions and arrests as matters of public record and by the limited nature of the [requester's] proposed investigation." *Union Leader*, 749 F.3d at 53; *accord N.Y. Times Co. v. U.S. Dep't of Homeland Sec.*, 959 F. Supp. 2d 449, 450, 455 (S.D.N.Y. 2013) (noting the "significantly diminished" privacy interest of those named in "a list of all aliens since 2008 who, after being convicted of a crime and serving their sentence, were designated for removal but were released from DHS custody").

However, ICE attempts to turn *Union Leader* on its head, arguing that, because the spreadsheet relates to "over 50,000 noncitizens" and because the agency has already released other information such as immigration history and criminal histories, this case involves "more significant privacy interests."  Defs.' Mot. 10.  But mere numerosity is insufficient to show that there is a "more significant" interest at stake.  *Id.*  Indeed, that is clearly incorrect because it would mean that smaller requests for the same information would be permissible, while one large request would not be permissible.  Nor is ICE's invocation of the additional information it has already released availing to distinguish this case.  Instead, ICE's readiness to release that information confirms the "significantly diminished" privacy interest—if there is any at all—of noncitizens subject to enforcement proceedings.  *N.Y. Times*, 959 F. Supp. 2d at 450, 455.  And, on the record before the Court, the conclusory statements ICE offers in the Pineiro Declaration do not suffice to identify an adequate privacy interest.  *See* Pineiro Decl. ¶ 64 (baldly stating that releasing the

---

[9] Plaintiff is not requesting the names of those who were not subject to enforcement actions.

names of non-citizens "could reasonably be expected to constitute an unwarranted invasion of privacy").

Moreover, any privacy interest is even further reduced by the fact that many entries in ICE's spreadsheet do not even list an alien's full name. *See, e.g.*, Vaughn Index, Feb. 2022 Denials Tab, Row 27 (ECF No. 26-3 at 6–8); *id.*, June 2022 Production, Row 41 (ECF No. 26-3 at 13–15). Even if the Court were to affirm ICE's withholding of names, it should order that these names be released because, as partial names, they do not identify any particular individual.

Regardless of the privacy interests held by aliens, they are significantly outweighed by the public's interest in "be[ing] informed about what their government is up to." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992). The public has a keen interest in understanding the justifications and application of the policy requiring authorization to remove these aliens, and releasing the names of these noncitizens furthers that interest by revealing matters such as whether the aliens committed crimes while authorization was pending. Thus, ICE's reliance on *Tuffly* (at 12) is misplaced because this is not a case where the "release of the names would not itself advance the public interest in understanding the impact of the government's [enforcement] policies." 870 F.3d at 1098. Indeed, this information will allow the public to review other material about these individuals to learn the potential risks posed by ICE's political leadership requiring ICE officers to spend additional time before proceeding with an enforcement action.

Rather than following *Tuffly*, this Court should follow the First Circuit's analysis in *Union Leader* because this type of information serves an important public interest. *Union Leader Corp.*, 749 F.3d at 56 ("Disclosure of the redacted names will enable the Union Leader to investigate public records pertaining to the arrestees' prior convictions and arrests, potentially bringing to light the reasons for ICE's apparent torpor in removing these aliens."). In this context, releasing the

names provides more than "mere information about private citizens," but rather will "forward the legitimate public interest in knowing what the Government is up to[.]" *Id.*, 749 F.3d at 56 (cleaned up).

ICE also misconstrues (at 13) Plaintiff's prior invocation of *CREW*, 746 F.3d at 1093. To be sure, *CREW* does not always require the release of names. But *CREW* does require the release of names in certain circumstances, such as when "[d]isclosure of the records would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *Id.* That is precisely the case here.

Moreover, a closer look at the Pineiro Declaration confirms that ICE has failed to justify its attempt to withhold *all* names. ICE cannot support that argument for *all* aliens listed in the records because many have been convicted of heinous crimes, and their privacy interests (if any) are substantially diminished. Moreover, ICE has provided no record evidence addressing the public interest. Pineiro Decl. ¶ 66 (stating that "the non-citizen's name serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities."). Accordingly, the Court should order ICE to release the names of the aliens listed in the records.[10]

---

[10] The same is true for ICE's withholding of monikers, which ICE characterizes as "AKAs" and "alias." Pineiro Decl. ¶ 73. ICE continues to claim that "monikers can be connected to specific individuals by certain populations and releasing monikers would not further the public's understanding of ICE operations." Defs.' Reply 13. That proposition fails for at least two reasons. First, ICE offers nothing beyond speculation for this claim, and the public interest in monikers is relevant for revealing matters like potential gang affiliation and similar issues of public interest. Second, even if the moniker could be connected to an individual, this argument fails for the same reason as ICE's attempt to withhold names—the public's interest far outweighs any privacy interest.

### D.   ICE fails to demonstrate that it lawfully withheld dates of birth.

Turning to ICE's withholding of full dates of birth, ICE cannot carry its burden under Exemption 7(C) because the agency only identifies "very vague and speculative harms." *Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 239 (D.D.C. 2020). Indeed, ICE rests on the same speculative harms that another Court in this District rejected when Customs and Border Patrol "withheld birth dates from their productions to protect the privacy of third-parties," contending that releasing such information "could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual." *Id.* at 237. These "vague and speculative" justifications are nearly identical to the justifications ICE offers here. *See* Pineiro Decl. ¶ 71 (stating that ICE withheld dates of birth because they "can be used to identify" individuals); *see also* Defs.' Reply 16 (claiming that "a month and year of birth could allow certain individuals to be identified, even if their names are withheld").

ICE responds by largely ignoring *AIC* and claiming that it need not release the month and year of birth because it has released the ages of the noncitizens. Defs.' Reply 17. But this misrepresents the facts in *AIC*. In that case, Customs and Border Patrol had already "provided the ages of the individuals in 99.98% of the lines in the [ ] spreadsheet," and the Court *still* ordered the release of birth month and year "because the agency has not identified any harm that would flow from a more limited disclosure, and the statute requires that reasonably segregable portions of records should be provided." *AIC,* 464 F. Supp. 3d at 238, 239. Indeed, the Court cited the disclosure of the ages by CBP as evidence that there was no cognizable privacy interest in the release of the birth years and months. *Id.* at 239 ("Indeed, CPB disclosed columns in its spreadsheets containing the age of the individuals, and that information is indistinguishable from their year of birth."). So too here.

Because ICE cannot identify any privacy interest in the month and year of birthdates, that is the end of the analysis.  *See Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 42 (D.D.C. 2017) (explaining two-part test under Exemption 7(C)).  Accordingly, the Court should follow *AIC* and reject these same arguments.

**E.      ICE fails to demonstrate that it lawfully withheld full addresses.**

Finally, ICE also fails to carry its burden of demonstrating that it may withhold the full residential addresses listed in the narrative portions of the various records.  This information, ICE suggests, "can be used to identify and/or locate the non-citizens at issue[.]"  Pineiro Decl. ¶ 75.  These concerns may be valid if Plaintiff sought the *full* "residential addresses," but Plaintiff only challenges ICE's redaction of the city and state information.  Defs.' Reply 19 n.12.

Here, ICE fails to identify any real privacy interest in this segregable information and conclusorily asserts that release would "intrude on personal privacy interests."  Defs.' Reply 19.  But the disclosure of only the city, state, and country information cannot be plausibly linked to specific individuals or locations.  ICE's failure to demonstrate a privacy interest is fatal to its argument because it has the "burden of demonstrating that the withheld documents are exempt from disclosure."  *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 385 (D.C. Cir. 2007).  And, absent such a showing, FOIA requires release of "[a]ny reasonably segregable portion of a record."  5 U.S.C. § 552(b).

But even if there were a slight privacy interest in this information, the public interest in knowing the particular locations from which aliens subject to removal came outweighs it, because such information can reveal information about problems internal to such countries, such as cartel or gang violence in certain locales.  It can also give more granular insight into particular migration trends.  ICE's claims that its release of country information satisfies the public interest in the origin of these aliens thus rings hollow.  *See* Defs.' Reply 19–20.  The requested information is also

deeply relevant to discussions about how the federal government interacts with neighboring countries and assists them in assessing issues of internal governance.

Accordingly, because ICE has failed to identify any privacy interest sufficient to withhold the city and state information included in the spreadsheets, the Court should order ICE to release all such information.

### IV.   ICE Fails to Carry its Burden of Demonstrating that its Exemption 7(E) Withholdings Protect Law Enforcement Techniques and Procedures.

ICE also fails to carry its burden of justifying its Exemption 7(E) withholdings with respect to redacting (i) apprehension locations and addresses; and (ii) names of gangs, terrorist groups, and monikers.  ICE must demonstrate that each withholding would "disclose techniques and procedures for law enforcement investigations or prosecutions, or [] disclose guidelines" for such investigations or prosecutions, but it has failed to do so.  5 U.S.C. § 552(b)(7)(E); *Whittaker v. U.S. Dep't of Just.*, No. 18-cv-1434-APM, 2019 WL 2569915, at *1, *3 (D.D.C. June 21, 2019).

### A.   ICE fails to demonstrate that the withheld apprehension location and address information constitutes a law enforcement technique or procedure.

At the outset, ICE misunderstands its burden under Exemption 7(E).  With respect to apprehension locations, ICE asserts that "Plaintiff overstates Defendants' burden for withholding law enforcement sensitive information."  Defs.' Reply 20.  But ICE incorrectly suggests that Plaintiff had argued that ICE must show that release of the information would *in fact* lead to circumvention of the law.  *Id.*  Plaintiff never advanced such an argument.  Rather, Plaintiff showed that the Pineiro Declaration's justification for withholding this information was a conclusory recitation—without any evidence—that such disclosures "*could* reveal techniques and procedures, as well as guidelines for law enforcement investigations or prosecutions, which *could* reasonably be expected to risk circumvention of the law."  Pineiro Decl. ¶ 116 (emphases added).  As Plaintiff

explained, "[t]his speculation on top of speculation does not carry ICE's burden."  Pl.'s Mot. 27 (citing *SAI*, 315 F. Supp. 3d at 233).

 Setting that mischaracterization aside, ICE attempts to shoulder its burden by arguing that releasing specific apprehension locations for noncitizens risks circumvention of the law because bad actors could learn the locations of ICE's enforcement efforts.  Defs.' Reply 20.  While this could be true with respect to certain information like "mile markers, roadway addresses, specific lanes of entry at points of entry," Pineiro Decl. ¶ 115, it cannot plausibly be the case for all such locations.  For instance, it certainly would not be a surprise to anyone that noncitizens were apprehended in El Paso, Texas, nor could ICE credibly allege that "the release of [the requested] information might create a risk of circumvention of the law."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).  As such, ICE's *blanket* assertion that all such data meets the requirements of Exemption 7(E) cannot stand.

 Further, with respect to *all* such data, ICE fails to carry its burden of showing how its apprehension locations are part of its law enforcement techniques.  ICE simply continues to repeat the conclusory assertions (Defs.' Reply 21) that "specific apprehension locations are part of its law enforcement techniques, procedures, or guidelines" without explaining "what procedures are at stake."  *CREW*, 746 F.3d at 1102.  Rather, ICE references certain nonpublic guidelines (at 21) pertaining to the apprehension of noncitizens, but such information has not been requested nor has ICE explained how the guidelines connect to the apprehension location data sought here.  Such administrative data is simply the result of ICE's actions, but "[t]he phrase techniques and procedures ... refers to how law enforcement offices *go about* investigating a crime." *Whittaker*, 2019 WL 2569915, at *2 (quotation marks omitted; alteration and emphasis in original).

Thus, if ICE uses specific techniques and procedures to determine apprehension locations, it must explain the connection between those procedures and the locations.  But it has not done so here.  In effect, ICE asks the Court to assume that this withheld information would divulge a law enforcement technique or procedure, but that assumption is unlawful.  *Id.*  Accordingly, the Court should order ICE to release this information.

**B.      ICE also fails to demonstrate that the withheld gang, cartel, and terrorist affiliation information constitutes a law enforcement technique or procedure.**

Similarly, ICE's attempt to withhold gang, cartel, terrorist affiliation and monikers under Exemption 7(E) also fails because release would not divulge a law enforcement technique or procedure.  5 U.S.C. § 552(b)(7)(E).  ICE posits (at 23) that this information must be withheld because some affiliations were based on intelligence sharing and "disclosing the information could reveal the procedure for, and extent of, intelligence sharing."  But this same argument was rejected in *Whittaker*.  There, the Court rejected the FBI's argument that revealing potentially derogatory information discovered in a name check would divulge a law enforcement technique because it "would not necessarily reveal how the [agency] 'goes about' collecting information returned from such inquiries."  *Whittaker*, 2019 WL 2569915, at *2.  Here too the disclosure of affiliations does not reveal anything about *how* ICE collects that information.  And ICE cannot hide behind the invocation of nebulous concerns about "intelligence sharing" because it fails to explain how the affiliation information reveals anything about the "procedure for, and extent of, intelligence sharing."  Defs.' Reply 23.  Here, like in *Whittaker*, "[t]he declarant certainly does not say so."  2019 WL 2569915, at *2; Pineiro Decl. ¶ 130 (resting on conclusory assertions).

Perhaps sensing the infirmity of its case, ICE invokes (23) the specter of cumulative harm.[11]   The idea being that taken alone this information may not be protected under Exemption 7(E), but if released with the other requested information it could alert noncitizens about the intelligence gathered upon them.   *Id.*   But this argument still fails to carry ICE's burden to demonstrate that *each* withholding would "disclose techniques and procedures for law enforcement investigations or prosecutions."   5 U.S.C. § 552(b)(7)(E).   Additionally, the vast majority of noncitizens identified were approved for enforcement actions and, as such, are aware of law enforcement's interest in them, obviating such concerns.

Finally, taken alone or cumulatively, the D.C. Circuit confirms that ICE "must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *CREW*, 746 F.3d at 1102 (emphasis in original).   ICE has not done so, and the Court should therefore deny ICE's motion.

## CONCLUSION

The public has a substantial interest in learning how the Federal Government applies or does not apply immigration law to protect U.S. citizens.   Here, the public record shows that political leadership imposed administrative burdens that frustrate immigration enforcement.   Only by requiring ICE to release the withheld information can this Court fulfill FOIA's mandate "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Robbins Tire*, 437 U.S. at 242.   Accordingly, the Court should deny ICE's motion for partial summary judgment and grant Plaintiff's motion.

---

[11] As noted throughout this reply, and in Plaintiff's cross-motion, ICE has fallen far short of satisfying its burden of identifying any harm that would be caused by releasing the withheld portions of the spreadsheet.   Rather, ICE relies at each turn on speculation and conclusory statements.   But as demonstrated above, that will not do.

November 17, 2023

Respectfully submitted,

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel.: (202) 787-1060
Email: bfield@schaerr-jaffe.com

REED D. RUBINSTEIN
D.C. Bar No. 400153
AMERICA FIRST LEGAL FOUNDATION
600 14th Street, NW
Fifth Floor
Washington, DC 20005
Tel.: (202) 964-3721
Email: reed.rubinstein@aflegal.org